## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Cortez Byrd and Simmons Lumber Company, S.A.,   ) <br>   ) <br>     Plaintiffs/Judgment Creditors,   ) <br>   ) <br>     v.   ) <br>   ) <br> Corporacion Forestal y Industrial de Olancho, S.A.   ) <br> (Corfino), William E. Simmons, III,   ) <br> Carl Swan, Israel Pacheco, Alberto Figueroa,   ) <br> John Pearson, Myra Berlioz, Oscar Alvarenga,   ) <br> and Maderas de Exportacion, S.A.,   ) <br>   ) <br>     Defendants/Judgment Debtors.   ) | 1:11-mc-00443 (WHP) |

### SUPPLEMENTAL DECLARATION OF CHARLES H. CAMP

I, CHARLES H. CAMP, pursuant to 28 United States Code Section 1746, declare under penalty of perjury that the following is true and correct:

1.      I am not a party to this action, am over 18 years of age, and practice law at the Law Offices of Charles H. Camp, P.C., 1025 Thomas Jefferson Street, N.W., Suite 115G, Washington, D.C.   20007.   I am counsel to Plaintiffs/Judgment Creditors Cortez Byrd and Simmons Lumber Company, S.A. ("Plaintiffs").

2.      I make this affidavit based upon my own personal knowledge and understanding of the matters set forth below in this affidavit.

3.      The Final Judgment entered on February 24, 2003 by the Mississippi District Court against Defendants/Judgment Debtors Corporacion Forestal y Industrial de Olancho, S.A. ("Corfino") and others was not a default judgment but a judgment based on the merits following a trial on January 27, 2003 in which Corfino and the other defendants were given significant advance notice but voluntarily failed to appear.

## ENTRY OF FINAL JUDGMENT AGAINST CORFINO

4.      Corfino and all of the defendants in the Mississippi lawsuit were represented by Thomas L. Kirkland, Jr. of Copeland, Cook, Taylor & Bush in Ridgeland, Mississippi and Steven Craig Panter of the Panter Law Firm, PLLC in Madison, Mississippi from June 1997, when the lawsuit was filed in the United States District Court for the Southern District of Mississippi (the "Mississippi District Court"), until September 24, 2002, when the Mississippi District Court granted the motion of Messrs. Kirkland and Panter to withdraw as counsel to Corfino and the other defendants.  Corfino and two of the individual defendants who appealed the District Court's decision that they had no sovereign immunity, also were represented by Messrs. Kirkland and Panter in its unsuccessful appeal to the United States Court of Appeals for the Fifth Circuit (Case # 98-60288), which took place from May 15, 1998, until September 1, 1999. *Byrd v. Corporacion Forestal y Industrial De Olancho S.A.*, 182 F.3d 380 (5th Cir. 1999).

5.      Consistent with the docket sheet for the Mississippi lawsuit, on January 27, 2003, the District Court entered an order and default against Corfino, neither of which are or became the "Final Judgment" being enforced by Plaintiffs as the order and default were replaced in their entirety by the Final Judgment entered by the District Court on February 24, 2003, after full consideration of documentary evidence and live witness testimony presented to the Court at a trial held on January 27, 2003.

6.      Following entry of the Final Judgment by the Mississippi District Court on February 24, 2003, pursuant to the Republic of Honduras (the "Republic") Civil Code of Procedure, ch. II, arts. 135-150, through the services of Honduran lawyers Cesar Gonzalez Ramirez and Susan Castellano, the Final Judgment and a Spanish translation of the Final Judgment were served upon Corfino and the other Honduran defendants/judgment debtors in

Honduras.   A true and correct a copy of Articles 135-150, along with a true and correct translation of such Articles is attached hereto as Exhibit 1.

## SERVICE OF PLAINTIFFS' SECTION 1610(c) MOTION UPON THE REPUBLIC

7.     As I stated in my January 23, 2013, Affidavit of Service, on December 29, 2012, I served Plaintiffs' "Motion for Section 1610(c) Order Confirming Plaintiffs May Execute Judgment Against the Government of Honduras, Successor in Interest to Judgment Debtor Corporacion Forestal y Industrial de Olancho, S.A." (the "Section 1610(c) Motion") by Federal Express upon the Republic of Honduras by serving Attorney General Luis Alberto Rubi Avila. Such service upon Mr. Rubi, one of two attorney generals of the Republic, was accomplished on December 29, 2012, and was entirely consistent with, and not prohibited by the Civil Code of Procedure of Honduras or any other provision of Honduran law, was effective service upon the Government of Honduras, and gave actual notice of Plaintiffs' Motion to the Government of Honduras.

## THE REPUBLIC--SUCCESSOR-IN-INTEREST TO CORFINO'S LIABILITY UNDER THE JUDGMENT

8.     I have reviewed the declarations of Juan Arnaldo Hernandez Espinoza, Nelson Flores Gerardo Molina, and Martha Guadalupe Teruel (the "Republic's Declarations") submitted to the Court in support of the "Motion by the Republic of Honduras Pursuant to Rule 60(b) to Vacate the January 23, 2013 Order and Deny Plaintiffs' Motion under 28 U.S.C. Section 1610(c)."   The Republic's Declarations' descriptions of Corfino and its operations are inconsistent with the sources referenced in, and/or attached as Exhibits to this Declaration.

9.     The "main purpose of [Corfino] shall be the industrial and commercial exploitation, in accordance with the country's laws, of forest resources located in the reserve

zone of Olancho, constituted by the Government through Legislative Decree No. 120 of November 7, 1976." Dec. 465, May 1977, 22,205 The Gazette (Honduras), Exhibit 3 hereto, at p. 1.

10.    The Republic, both internally and externally, has treated debts of Corfino as debts of the Honduran state. For example, internal reports of the Bank of Honduras included in a 1990 USAID project report show that Corfino was listed as one of many State entities whose debts were assumed by the government of Honduras as "External Debt of the Official Sector of Honduras."[1]  Corfino was again listed as a "Non-Financial Public Institution" in the annual financial report of the Central Bank of Honduras in 1998 and 1999.[2]

11.    Likewise, the Republic's treatment of Corfino, which was created to exploit Honduran Government forestry assets, as an asset of the state is reflected in reports from the Honduran Secretariat of Finances, which list assets of Corfino as assets of the Honduran State.

---

[1]"Honduras Project Paper, FY 1990 Economic Support Fund," United States International Development Cooperation Agency for International Development, Table 14, Table 16.  Both Corfino and Cohdefor are listed as "Inst. Publicas No Financieras" ("Non-Financial Public Institutions") within Table 14, pg. 2 of 3, entitled Proyeccion Deuda External Del Sector Oficial De Honduras A Mediano Y Largo Plazo Por Deudor E Inst. Prestamista 1990" (Projection of External Debt of the Official Sector of Honduras of Medium and Long Term 1990 By Debtor and Lending Institution).  Corfino is listed along with an indented list of its corresponding lending institutions below. Within Table 16, pg. 1, entitled "Proyeccion Deuda Externa Del Sector Oficial De Honduras A Mediano Y Largo Plazo Por Deudor" (Projection of External Debt of the Official Sector of Honduras of Medium and Long Term 1990 By Debtor) Corfino is listed along with other sources of the national debt of the Government of Honduras.

[2] Memoria 1998, Banco Central de Honduras, p. 62.  Corfino and Cohdefor are listed as "Inst. Publ. No Financieras" in a sub-column of a chart entitled "Movimiento de la Deuda Externa Del Sector Oficial De Honduras a Mediano Y Largo Plazo, Según Usario Final"; see also Memoria 1999, Banco Central de Honduras, p. 40.  Corfino and Cohdefor are listed as "Inst. Publ. No Financieras" in a sub-column of a chart entitled "Movimiento de la Deuda Externa Del Sector Oficial De Honduras a Mediano Y Largo Plazo, Según Usario Final."

Those reports break down the value of Honduras's national assets, including Corfino, as one of many Immovable National Assets of the Honduran state.[3]

12.      Despite statements to the contrary in the Republic's Declarations, and as confirmed in Mr. Camp's Declaration, when Corfino ceased operations upon state lands in the Olancho Region, rather than paying any portion of the Judgment, the Republic distributed some of Corfino's assets to charitable organizations, an action currently under investigation by the current Honduran Government.   That investigation is looking into whether or not Corfino's "assets of the state" (a true and correct English translation) have been misused by charitable organizations.   Specifically, in 2011, the Secretary of Finances asked (a true and correct English translation), "that the [Honduran] Cabinet Counsel investigate what happened to the [Corfino lands] and other assets of the state."   The Secretary confirmed that (a true and correct English translation), "the State has donated some of those lands, which have been sold, contrary to the law."[4]

---

[3] "Avaluos De Bienes Muebles E Inmuebles", Secretaria De Finanzas, Contaduria General De La Republica, Oficina De Administracion De Bienes Nacionales, Al 30 De Junio 2008; Avaluos De Bienes Muebles E Inmuebles", Secretaria De Finanzas, Contaduria General De La Republica, Oficina De Administracion De Bienes Nacionales, Al 31 De Octubre 2008; Avaluos De Bienes Muebles E Inmuebles", Secretaria De Finanzas, Contaduria General De La Republica, Oficina De Administracion De Bienes Nacionales, Al 31 de Julio 2009.   Corfino is listed in all three documents under "Bienes Inmuebles" (Inmovable Assets).   All three documents list the "Bienes Inmuebles" (Inmovable Assets) and "Bienes Muebles" (Movable Assets) that make up the "Bienes Nacionales" (National Assets).

[4] "El ministro de Finanzas, William Chong Wong, pidió este martes en el Consejo de Ministros que se investigue que pasó con los terranos de Corporacion Forestal industrial de Olancho (Corfino), y otros bienes del Estado que hasta el momento no se sabe quien se quedó con ellos." "[Chong] [a]ñadió que 'algunas tierras han sido embargados por empleados y otros que hemos encontrado que el Estado los ha donados de los cuales algunos los han vendido siendo eso prohibido por la ley.'"   "Piden Investigar terrenos de Corfino y otros bienes del Estado," http://www.proceso.hn/bin/user/print.php?aid=41119 (August 16, 2011).

13.     The Republic's domination of Corfino and its assets was by and through its now-abolished forestry ministry, known as Cohdefor.  At the time Cohdefor was abolished by the Republic (and Cohdefor's duties and obligations spread throughout various other existing and new Government entities), a law was passed, Forestry Law—Protected Areas and Wildlife, art. 201, which states that the liabilities of Cohdefor will be assumed by the Secretariat of Finances.[5] None of the Republic's Declarations state otherwise.

## DOCUMENTS AND CERTIFIED TRANSLATIONS ATTACHED HERETO ARE TRUE AND CORRECT COPIES.

14.     Attached hereto as Exhibit 2 is a true and correct copy of a certified English translation and Spanish original, with notarized Translation Certification, of an excerpt (Articles 1-4) of the Honduran Forest Development Corporation Act stating, *inter alia*, that Honduras' Forestry Ministry, the Corporacion Hondurena de Desarrollo Forestal ("Cohdefor"), is established for the "purpose . . . [of] optimizing the exploitation of the country's forest resources, ensuring their protection, improvement, conservation, and growth, and generating funds for the funding of state programs, in order to accelerate the country's economic and social development process. . . .  The Corporation shall be the executing body of the Government's forestry policy, and its programs and projects shall be in harmony with the National Development Plan. . . .  Its obligations shall be fully guaranteed by the Government."

15.     Attached hereto as Exhibit 3 is a true and correct copy of a certified English translation and Spanish original, with notarized Translation Certification, of *The Gazette, Official*

---

[5] The original text of Article 201 states that, "los pasivos de la . . . AFE Cohdefor serán asumidos por la Secretaria de Estado en el Despacho de Finanzas."  Forestry Law—Protected Areas and Wildlife, Feb. 26, 2008, 31,544 *The Gazette* art. 201 (Honduras), Exhibit 4 hereto.

*Daily of the Republic of Honduras* publishing Decree Number 465 pertaining to the creation of Corfino by the Republic of Honduras.

16.     Attached hereto as <u>Exhibit 4</u> is a true and correct copy of a certified English translation and Spanish original, with notarized Translation Certification, of an excerpt of the Republic's Forestry Law Articles 1 and 201, stating, inter alia, that,

> The assets of the State Forestry Administration/Honduran Forestry Development Corporation (AFE-COHDEFOR) **and any programs and projects related to Forestry, Protected Areas, and Wildlife funded with internal or external resources**, that as of the effective date of this Law are under the administration of any State agency or entity, except municipal agencies or entities, shall become part of the assets of the National Institute for Forest Conservation and Development, Protected Areas, and Wildlife (*Instituto Nacional de Conservación y Desarrollo Forestal, Áreas Protegidas y Vida Silvestre*, "ICF") and shall be administered by said Institute as of the effective date of this Law. **Any liabilities of the State Forestry Administration/Honduran Forestry Development Corporation (AFE-COHDEFOR) shall be assumed by the Ministry of Finance.**

(Emphasis added.)

17.     Attached hereto as <u>Exhibit 5</u> is a true and correct copy of a certified English translation and Spanish original, with notarized Translation Certification, of an excerpt of minutes of a meeting of Corfino's Board of Liquidators of stating, inter alia,

> Attorney Maria Teresa Bulnes took the floor and stated: "In the case record, there is a copy of a fax that Mr. Williams Simmons II sent to his attorney, Ivis Discua Barrillas, in which he makes a comment to the effect that he (Williams Simmons II) has sought an Attorney to defend him and the Hondurans, and . . . that he already informed President Madura and the Embassy about it. . . . Engineer Medina said: ". . . I do not want to be irresponsible, so that tomorrow when that lawsuit [to obtain a judgment in Honduras based on the Final Judgment from the United States District Court for the Southern District of Mississippi] gets here, you go and ask what did the Board of Liquidators do and why didn't it anticipate the situation, and that's why I made the decision of hiring an International Lawyer – to prevent what may happen with that case,

**I am taking the legal steps on behalf of Honduras** and of the partners present here.

(Emphasis added.)

18.     Attached hereto as Exhibit 6 is a true and correct copy of a Motion to Dismiss filed July 21, 1997, by Corfino in the Mississippi lawsuit seeking to dismiss Plaintiffs' claims against Corfino on the basis of sovereign immunity.  The Motion to Dismiss states, *inter alia*,

> CORFINO is a corporation organized and existing under the laws of the Republic of Honduras.  As the Complaint alleges, more than 90% of the shares of CORFINO are owned by the Republic of Honduras through a governmental entity known as Corporacion Hondurena de Desarrollo Forestal [COHDEFOR]. . . .  As a result, CORFINO meets the definition of foreign state as set forth in U.S.C. § 1603.

19.     Attached hereto as Exhibit 7 is a true and correct copy of an excerpt from the United States Central Intelligence Agency Directorate of Intelligence's *Chiefs of State & Cabinet Ministers of Foreign Governments—A Directory*, dated January 2013.  It identifies Mr. Luis Rubi as the Republic of Honduras' Attorney General.

20.     Attached hereto as Exhibit 8 is a true and correct copy of United States Embassy Cable 09TEGUCIGALPA87, created February 9, 2009, entitled, "Honduran Congress Selects New Attorney General," and states, *inter alia*, "The Honduran Congress elected Luis Alberto Rubi Avila . . . as new Attorney General. . . ."

21.     Attached hereto as Exhibit 9 is a true and correct copy of a March 3, 2010, letter from Human Rights Watch to "Luis Alberto Rubi, Attorney General of Honduras."

CHARLES H. CAMP

May 3, 2013

# EXHIBIT 1



## JUDICIAL BRANCH OF HONDURAS

### SUPREME COURT OF JUSTICE
**Republic of Honduras, C.A.**

# CIVIL CODE OF PROCEDURE





# JUDICIAL BRANCH OF HONDURAS

## CHAPTER II
## COMMUNICATIONS

**Article 135. - TYPES.**
The Court shall communicate with the parties, third parties, and authorities through the following mechanisms:

**1.** Notifications -- to notify a decision, certificate of service, or action.

**2.** Summonses -- to require a person to appear in court and to act within a certain period.

**3.** Subpoenas -- to indicate the place, date, and time to appear or act.

**4.** Injunctions -- to order, in accordance with the law, a certain behavior or to cease activity.

**5.** Orders -- to order the payment of certifications or testimonies and to command any action to be performed by the registrars, notaries public, or officers of the court.

**6.** Official letters -- for communications with non-judicial authorities and officers other than those mentioned in the section above.

**Article 136.-NOTIFICATION OF DECISIONS.**
**1.** Notices of judicial decisions shall be sent to all parties in an action.

**2.** The first communication shall be governed by the provisions of the following articles. The second and subsequent communications to the same parties and third parties shall be made to the domicile or place where the first communication was successfully delivered.

**3.** The courts and tribunals shall also provide notice of pending procedures to those persons who, according to the case record, may be affected by an impending ruling, and to third parties in such instances set forth in this rule.

**4.** Notice of all judicial decisions shall be sent on the same day or on the day after their date or publication.

**Article 137. - METHOD OF COMMUNICATION.**





# JUDICIAL BRANCH OF HONDURAS

**1.** Communications shall be issued under the direction of the Clerk, who shall be responsible for arranging service. Such communications shall be effected in any of the following methods, as established in this Code:

a) Through the legal professional fulfilling the role of legal counsel, for communications to those persons who are a party to the action and represented by the legal professional.

b) Transmittal by electronic mail, postal mail, telegram, fax, or other technical means that may provide reliable confirmation for the record of the receipt, date and contents of the communication.

c) Hand delivery to the addressee of a true copy of the decision that is to be notified, of the injunction ordered by the Court, or of the subpoena or summons document for service.

**2.** The service document shall state the Court that has ordered the decision, and the case caption the given and surnames of the person who to be subpoenaed or summonsed, the purpose of the subpoena or summons, and the place, date, day, and time in which the person must appear in court, or the period in which the person must complete the act referenced in the summons to avoid the penalties established by law.

**3.** For notifications, subpoenas and summonses, no response of any kind from the interested person will be accepted or recorded, unless such response was ordered. For injunctions, a response shall be allowed to be stated briefly on the certificate of service.

### Article 138. - COMMUNICATION TO A PARTY'S LEGAL PROFESSIONAL.

**1.** Communication with parties to the action shall be made through each party's legal counsel who shall sign all notifications, summonses, subpoenas, and orders that must be performed by his or her client during the course of the litigation, including notifications of rulings and of any act that his or her client must personally perform.

**2.** The communication shall be addressed to the domicile of the legal counsel specified in the first pleadings of the case, by any of the means set forth in this Code.

### Article 139. - DIRECT COMMUNICATIONS TO THE PARTIES.

**1.** If the parties do not have legal counsel or if it is the first summons or subpoena to the defendant, communications shall be delivered to the parties' domicile.

**2.** The plaintiff's domicile shall be that which was stated in the complaint or in the petition or request that initiated the action. Additionally, the plaintiff shall specify, as the defendant's domicile, for the purpose of the first summons or subpoena, one or several places referred to in the following article. If the plaintiff specifies several places as a





## JUDICIAL BRANCH OF HONDURAS

domicile, the plaintiff shall indicate, to the best of his knowledge, the order in which communications may be delivered successfully.

**3.** The plaintiff shall also indicate how much information is known about the defendant and what is useful in locating the defendant, such as telephone, fax or other numbers.

**4.** The defendant, upon appearing in court, shall specify a different domicile for future communications.

### Article 140. - SPECIFICATION OF DOMICILE.
**1.** For communication purposes, the private domicile listed in the official records, whether at a privately owned property or a rental property, or business property, may be specified as the domicile. Also for the aforementioned purposes the place where non-occasional professional or work activity is performed may be specified as a domicile.

**2.** If the parties are not represented by a legal professional, the communications delivered to any of the places in the foregoing section that have been specified as domiciles, shall become effective as soon as the correct transmission of what has been communicated is confirmed and the addressee has acknowledged receipt of it.

**3.** If the communication is to command an appearance in an action or the performance or involvement of the parties in a certain procedural act, and the interested party has not acknowledged receipt, it shall remain on standby for the contingent communication by means of hand delivery of a copy of the decision or service document.

**4.** Whenever the parties change their domicile while the action is pending, they shall immediately communicate the change to the Court. Likewise, they shall communicate changes regarding their telephone, fax, or other numbers, provided that these numbers are being used by the Court for communication purposes.

### Article 141. - DOMICILE SEARCH
**1.** In such cases in which the plaintiff states that he or she is unable to specify a domicile or residence for the defendant for the purpose of service, convenient search methods shall be used to obtain the information, including searches in official records, agencies, professional associations, organizations, and businesses that may provide such information.

**2.** If these searches are futile, the communication shall be made by edict.





# JUDICIAL BRANCH OF HONDURAS

### Article 142.- COMMUNICATIONS WITH THIRD PARTIES.

**1.** Communications that must be made to witnesses, experts, and other persons who are not part of the action but must be involved in it, shall be sent to the addressees by any of the means set forth in the following article. The communication shall be sent to the domicile specified by the interested party, which could be obtained, if necessary, through the domicile search referenced in this rule.

**2.** When the record reflects a failure to effect communication, or the circumstances of the case so provide, upon attending to the purpose of the communication and the nature of the acts described in the communication, the Court shall order that the case proceed on the basis of contingent communication by hand delivery of a copy of the decision or service document.

**3.** The persons referred to in this article must communicate to the Court any change of domicile that occurs while the action is pending. The parties will be informed of this obligation during their first court appearance.

### Article 143. - TRANSMITTAL OF COMMUNICATIONS BY ELECTRONIC MAIL, FAX, COURIER OR REGULAR MAIL.

**1.** When a copy of a decision or service document is issued by electronic mail, fax, courier, regular mail or certified mail, including by telegram with delivery confirmation, or by any other communication method that may provide reliable confirmation for the record of the date of receipt and contents of the notification, the clerk shall certify the transmission and contents of the notification in the record and shall attach to the record the delivery confirmation or the means by which receipt was confirmed.

**2.** At the request of the party and at the cost of the requester, it may be ordered that the communication be transmitted simultaneously to several places.

**3.** The parties and the professionals involved in the action shall inform the Court the communication means previously mentioned that are available to them and their address.

**4.** When the addressee's domicile is in the same department or district of the courthouse, and the communication does not depend on personal service or performance or involvement in the proceedings, the summons document to be served may be sent by any of the means referenced in section 1, so that the addressee may appear in said court for the purpose of being notified or ordered or receiving a copy of a court filing.

**5.** The service document shall state with due precision the purpose for which the appearance is ordered, indicate the caption and subject matter, and include a warning that if the person without reasonable cause does not respond within the period





# JUDICIAL BRANCH OF HONDURAS

indicated, the subject matter or notice referenced in the communication shall take effect.

## Article 144. - CONTINGENT COMMUNICATION BY HAND DELIVERY OF COPY OF THE DECISION OR SERVICE DOCUMENT.

**1.** Hand delivery to the addressee of a copy of the decision or the service document shall be effected in the courthouse or in the domicile of the person to be notified, ordered, subpoenaed, or summonsed only in instances in which notification by the methods mentioned in the foregoing articles failed.

**2.** The hand delivery shall be documented by certificate of service, which shall be signed by the clerk who effects service and by the person to receive service, whose name shall be recorded.

**3.** When the addressee of the communication is located at the domicile and denies receiving a copy of the decision or service document, or refuses to sign the certificate of service, the Clerk shall advise the addressee of his or her duty pursuant to the foregoing article and, if the addressee continues to refuse, he or she shall be advised that it will be available in the Clerk's Office and the subject of the communication shall take effect and be recorded on the certificate.

**4.** If the domicile where the communication to be effected is a place where the addressee has his or her domicile according to official records, professional association directories, or is a residence or office rented by the defendant, and the said addressee cannot be found there, the document may be hand delivered to any employee or family member over 14 years of age who is at that place, advising the receiver that he or she must deliver the copy of the decision or service document to the addressee or give notice to the addressee, if the receiver knows his or her whereabouts.

**5.** If the communication is addressed to the addressee's usual place of work, in the addressee's absence, the delivery may be made to the person who says he or she knows the addressee or, to the agent responsible for receiving documents or objects for the addressee.

**6.** The certificate of service shall state the addressee's name, the date, and the time at which the addressee was looked for and not found at his or her domicile, as well as the name of the person who received the copy of the decision or service document, and his or her relationship with the addressee, and the communication shall be deemed delivered.





## JUDICIAL BRANCH OF HONDURAS

**7.** In the event that no one is found at the domicile on whom service may be effected, the designated officer or clerk shall try to find out whether the addressee lives there. If he or she no longer lives or works there and someone knows the current domicile, it shall be noted on the certificate that service was not effected.

**8.** If the defendant's domicile could not be obtained by this means, and the plaintiff has not specified other possible domiciles, a domicile search shall be made in accordance with this Code.

### Article 145.- CENTRAL NOTIFICATION SERVICE.
The Supreme Court of Justice shall approve regulation for the creation and functioning of the Judicial Notification Service, which, when it begins to operate, shall effect service of communications in civil actions.

### Article 146 .- EDICTS.
**1.** If upon completion of the domicile search referenced in this Code the addressee's domicile could not be obtained or the addressee could not be found and service of the communication could not be effected, the Court, through an order, shall mandate that the communication be made by affixing a copy of the decision or service document on the court bulletin board. At the cost of the party, the communication shall be published in a print newspaper and by radio, both with national coverage, three times, at intervals of ten (10) business days.

### Article 147.- COMMUNICATIONS BY JUDICIAL ASSISTANCE.
**1.** When communications must be effected by a court different from the court that issued the communication, the corresponding service document or copy shall be included, along with other documents, depending on the case.

**2.** These communications shall be completed within a maximum period of fifteen (15) days from their receipt. When the communication is not completed within the time indicated, the cause for the delay, if applicable, shall be stated.

### Article 148.- ANNULLING AND RECTIFYING COMMUNICATIONS.
**1.** Communications not made in accordance with this Code shall be void and may be indefensible.

**2.** However, when the person notified, subpoenaed, summonsed, or ordered had been informed of the matter and did not report the annulment of the first service attempt, the communication shall for all purposes shall be deemed to have been completed at that time in accordance with this Code.





# JUDICIAL BRANCH OF HONDURAS

**Article 149. - COMMUNICATION OF OFFICIAL LETTERS AND ORDERS.**

**1.** Orders and official letters shall be transmitted directly to the authority or official to whom they are addressed. However, they may be served personally, upon the parties' request.

**2.** In all cases, the party serving the official letters and orders must pay the expenses required for completion of service.

**Article 150. - RESPONSIBILITIES.**

**1.** Clerks or officials, who in the performance of the communication duties as assigned to them by this Code cause improper setbacks or delays, due to malice or negligence, shall be disciplined by their supervisor.

**2.** Legal professionals who commit fraud or cause delays in communications that have been accepted, or who do not abide by any of the established legal formalities, causing harm to the other party or to a third party, shall be responsible for the loss and damages incurred and shall be sanctioned pursuant to the laws and statutes.





## PODER JUDICIAL DE HONDURAS

### CORTE SUPREMA DE JUSTICIA
**República de Honduras, C. A.**

# CODIGO PROCESAL CIVIL



CENTRO ELECTRÓNICO DE DOCUMENTACIÓN E INFORMACIÓN JUDICIAL



# PODER JUDICIAL DE HONDURAS

## CAPÍTULO II
## ACTOS DE COMUNICACIÓN

**Artículo 135.- CLASES.**
El tribunal se comunicará con las partes, con los terceros y con las autoridades, mediante la utilización de los siguientes instrumentos:
1. Notificaciones, cuando tengan por objeto dar noticia de una resolución, diligencia o actuación.

2. Emplazamientos, para personarse y para actuar dentro de un plazo.

3. Citaciones, cuando determinen lugar, fecha y hora para comparecer y actuar.

4. Requerimientos para ordenar, conforme a la ley, una conducta o inactividad.

5. Mandamientos, para ordenar el libramiento de certificaciones o testimonios y la práctica de cualquier actuación cuya ejecución corresponda a registradores, corredores de comercio, o a funcionarios del tribunal.

6. Oficios, para las comunicaciones con autoridades no judiciales y funcionarios distintos de los mencionados en el número anterior.

**Artículo 136.- NOTIFICACIÓN DE RESOLUCIONES.**
1. Las resoluciones judiciales se notificarán a todos los que sean parte en el proceso.

2. La primera comunicación se regulará por las disposiciones de los artículos siguientes. La segunda y demás comunicaciones a las mismas partes y terceros se efectuarán en el domicilio o lugar en que tuvo éxito la primera de ellas.
3. Los juzgados y tribunales también notificarán el proceso pendiente a las personas que, según el mismo expediente, puedan verse afectadas por la sentencia que en su momento se dictare, así como a los terceros en los casos previstos por esta ley.

4. Todas las resoluciones judiciales se notificarán en el mismo día o al siguiente de su fecha o publicación.

**Artículo 137.- FORMA DE LA COMUNICACIÓN.**
1. Los actos de comunicación se realizarán bajo la dirección del secretario, que será el responsable de la adecuada organización del servicio. Tales actos se efectuarán en alguna de las formas siguientes, según disponga este Código:





## PODER JUDICIAL DE HONDURAS

**a)** A través del profesional del derecho, en funciones de representante procesal, tratándose de comunicaciones a quienes estén personados en el proceso con representación de aquél.

**b)** Remisión de lo que haya de comunicarse mediante correo electrónico, postal, telegrama, fax, o cualquier otro medio técnico que permita dejar en el expediente constancia fehaciente de la recepción, de su fecha y del contenido de lo comunicado.

**c)** Entrega al destinatario de copia literal de la resolución que se le haya de notificar, del requerimiento que el tribunal le dirija o de la cédula de citación o emplazamiento.

**2.** La cédula expresará el tribunal que hubiese dictado la resolución, y el litigio en que haya recaído, el nombre y apellidos de la persona a quien se haga la citación o emplazamiento, el objeto de éstos y el lugar, fecha, día y hora en que deba comparecer el citado, o el plazo dentro del cual deba realizarse la actuación a que se refiera el emplazamiento, con la prevención de los efectos que, en cada caso, la ley establezca.

**3.** En las notificaciones, citaciones y emplazamientos no se admitirá ni consignará respuesta alguna del interesado, a no ser que así se hubiera mandado. En los requerimientos se admitirá la respuesta que dé el requerido, consignándola sucintamente en la diligencia.

### Artículo 138.- COMUNICACIÓN AL PROFESIONAL DEL DERECHO DE LA PARTE.

**1.** La comunicación con las partes personadas en el juicio se hará a través de su representante procesal, quien firmará las notificaciones, emplazamientos, citaciones y requerimientos de todas clases que deban hacerse a su poderdante en el curso del pleito, incluso las de sentencias y las que tengan por objeto alguna actuación que deba realizar personalmente el poderdante.

**2.** La comunicación se dirigirá al domicilio profesional designado en los primeros escritos de las partes, por cualquiera de los medios previstos por este Código.

### Artículo 139.- COMUNICACIONES DIRECTAS A LAS PARTES.

**1.** Cuando las partes no tengan profesional del derecho o se trate del primer emplazamiento o citación al demandado, los actos de comunicación se harán por remisión al domicilio de las partes.

**2.** El domicilio del demandante será el que haya hecho constar en la demanda o en la petición o solicitud con que se inicie el proceso. Asimismo, el demandante designará, como domicilio del demandado, a efectos del primer emplazamiento o





## PODER JUDICIAL DE HONDURAS

citación de éste, uno o varios de los lugares a que se refiere el artículo siguiente. Si el demandante designare varios lugares como domicilio, indicará el orden por el que, a su entender, puede efectuarse con éxito la comunicación.

**3.** Asimismo, el demandante deberá indicar cuantos datos conozca del demandado y que puedan ser de utilidad para la localización de éste, como números de teléfono, de fax o similares.

**4.** El demandado, una vez comparecido, podrá designar, para sucesivas comunicaciones, un domicilio distinto.

### Artículo 140.- DESIGNACIÓN DE DOMICILIO.
**1.** A efectos de actos de comunicación, podrá designarse como domicilio el que aparezca en registros oficiales como domicilio privado, sea en propiedad o como arrendatario, o profesional. También podrá designarse como domicilio, a los referidos efectos, el lugar en que se desarrolle actividad profesional o laboral no ocasional.

**2.** Si las partes no estuviesen representadas por profesional del derecho, las comunicaciones efectuadas en cualquiera de los lugares previstos en el numeral anterior, que se hayan designado como domicilios, surtirán plenos efectos en cuanto se acredite la correcta remisión de lo que haya de comunicarse y conste su recepción por el destinatario.

**3.** Si la comunicación tuviese por objeto el personamiento en juicio o la realización o intervención personal de las partes en determinadas actuaciones procesales y no constare la recepción por el interesado, se estará a lo dispuesto para la comunicación subsidiaria por medio de entrega de copia de la resolución o cédula.

**4.** Cuando las partes cambiasen su domicilio durante la sustanciación del proceso, lo comunicarán inmediatamente al tribunal. Asimismo deberán comunicar los cambios relativos a su número de teléfono, fax o similares, siempre que estos últimos estén siendo utilizados como instrumentos de comunicación con el tribunal.

### Artículo 141.- AVERIGUACIÓN DEL DOMICILIO.
**1.** En los casos en que el demandante manifestare que le es imposible designar un domicilio o residencia del demandado, a efectos de su personamiento, se utilizarán los medios oportunos para averiguar esas circunstancias, pudiendo dirigirse, en su caso, a registros oficiales, organismos, colegios profesionales, entidades y empresas que puedan dar información sobre ello.

**2.** Si estas averiguaciones resultaren infructuosas, la comunicación se llevará a cabo mediante edictos.





## PODER JUDICIAL DE HONDURAS

**Artículo 142.- COMUNICACIONES CON TERCEROS.**
**1.** Las comunicaciones que deban hacerse a testigos, peritos y otras personas que, sin ser parte en el juicio, deban intervenir en él, se remitirán a sus destinatarios por alguno de los medios previstos en el artículo siguiente. La comunicación se remitirá al domicilio que designe la parte interesada, pudiendo realizarse, en su caso, las averiguaciones domiciliarias a que se refiere esta ley.

**2.** Cuando conste en el expediente el fracaso de la comunicación mediante remisión, o las circunstancias del caso lo aconsejen, atendidos el objeto de la comunicación y la naturaleza de las actuaciones que de ella dependan, el tribunal podrá ordenar que se proceda con arreglo a lo dispuesto para la comunicación subsidiaria por medio de entrega de copia de la resolución o cédula.

**3.** Las personas a que se refiere este artículo deberán comunicar al tribunal cualquier cambio de domicilio que se produzca durante la sustanciación del proceso. En la primera comparecencia que efectúen se les informará de esta obligación.

**Artículo 143.- REMISIÓN DE LAS COMUNICACIONES POR CORREO ELECTRÓNICO, FAX, MENSAJERO PRIVADO O CORREO ORDINARIO.**
**1.** Cuando proceda la remisión de la copia de la resolución o de la cédula por correo electrónico, fax, mensajero privado, correo ordinario o certificado, incluso por telegrama con acuse de recibo, o por cualquier otro medio de comunicación que permita dejar en el expediente constancia fehaciente de haberse recibido la notificación, de la fecha de la recepción, y de su contenido, el secretario dará fe en el expediente de la remisión y del contenido de lo remitido, y unirá a aquéllos, en su caso, el acuse de recibo o el medio a través del cual quede constancia de la recepción.

**2.** A instancia de parte y a costa de quien lo solicite, podrá ordenarse que la remisión se haga de manera simultánea a varios lugares.

**3.** Las partes y los profesionales que intervengan en el proceso deberán comunicar al tribunal el hecho de disponer de los medios antes indicados y su dirección.

**4.** Cuando el destinatario tuviere su domicilio en el departamento o circunscripción en donde radique la sede del tribunal, y no se trate de comunicaciones de las que dependa el personamiento o la realización o intervención personal en las actuaciones, podrá remitirse, por cualquiera de los medios a que se refiere el numeral 1, cédula de emplazamiento para que el destinatario comparezca en dicha sede a efectos de ser notificado o requerido o de entregársele copia de algún escrito.





# PODER JUDICIAL DE HONDURAS

**5.** La cédula expresará con la debida precisión el objeto para el que se requiere la comparecencia del emplazado, indicando el procedimiento y el asunto a que se refiere, con la advertencia de que, si no comparece sin causa justificada dentro del plazo señalado, se tendrá por hecha la comunicación de que se trate o por efectuado el traslado.

**Artículo 144.- COMUNICACIÓN SUBSIDIARIA POR MEDIO DE ENTREGA DE COPIA DE LA RESOLUCIÓN O DE CÉDULA.**
**1.** La entrega al destinatario de la copia de la resolución o de la cédula se efectuará en la sede del tribunal o en el domicilio de la persona que deba ser notificada, requerida, citada o emplazada, sólo en caso de que los medios de notificación previstos en los artículos anteriores hubieran resultado fallidos.

**2.** La entrega se documentará por medio de diligencia, que será firmada por el secretario que la efectúe y por la persona a quien se haga, cuyo nombre se hará constar.

**3.** Cuando el destinatario de la comunicación sea hallado en el domicilio y se niegue a recibir la copia de la resolución o la cédula, o no quiera firmar la diligencia acreditativa de la entrega, el secretario le advertirá sobre la obligación que le impone el artículo anterior y, si insistiere en su negativa, le hará saber que queda a su disposición en la secretaría del tribunal, produciéndose los efectos de la comunicación, de todo lo cual quedará constancia en la diligencia.

**4.** Si el domicilio donde se pretende practicar la comunicación fuere el lugar en el que el destinatario tenga su domicilio según registros oficiales, publicaciones de colegios profesionales, o fuere la vivienda o local arrendado al demandado, y no se encontrare allí dicho destinatario, podrá efectuarse la entrega a cualquier empleado o familiar, mayor de 14 años, que se encuentre en ese lugar, advirtiendo al receptor que está obligado a entregar la copia de la resolución o la cédula al destinatario de ésta, o a darle aviso, si sabe su paradero.

**5.** Si la comunicación se dirigiere al lugar de trabajo habitual del destinatario, en ausencia de éste, la entrega se efectuará a persona que manifieste conocerle o, si existiere dependencia encargada de recibir documentos u objetos, a quien estuviere a cargo de ella.
**6.** En la diligencia se hará constar el nombre del destinatario de la comunicación y la fecha y la hora en la que fue buscada y no encontrada en su domicilio, así como el nombre de la persona que recibe la copia de la resolución o la cédula, y su relación con el destinatario, produciendo todos sus efectos la comunicación así realizada.





## PODER JUDICIAL DE HONDURAS

**7.** En el caso de que no se halle a nadie en el domicilio a que se acuda para la práctica de un acto de comunicación, el secretario o funcionario designado procurará averiguar si vive allí su destinatario. Si ya no residiese o trabajase en él y alguna de las personas consultadas conociese el actual, se consignará en la diligencia, la negativa de comunicación.

**8.** Si no pudiera conocerse por este medio el domicilio del demandado y el demandante no hubiera designado otros posibles domicilios, se procederá a averiguar su domicilio conforme a lo previsto en este Código.

### Artículo 145.- SERVICIO COMÚN DE NOTIFICACIONES.
La Corte Suprema de Justicia aprobará un reglamento de creación y funcionamiento del Servicio Judicial de Notificaciones, que cuando esté operativo practicará los actos de comunicación que hayan de realizarse en los procesos civiles.

### Artículo 146.- COMUNICACIÓN EDICTAL.
**1.** Una vez practicadas, en su caso, las averiguaciones a que se refiere este Código, si no pudiere conocerse el domicilio del destinatario de la comunicación, o no pudiere hallársele ni efectuarse la comunicación con todos sus efectos, el tribunal, mediante providencia, mandará que se haga la comunicación fijando la copia de la resolución o la cédula en la tabla de avisos. A costa de la parte, se publicará la comunicación en un diario impreso y en una radiodifusora en ambos casos de cobertura nacional por tres veces, con intervalo de diez (10) días hábiles.

### Artículo 147.- ACTOS DE COMUNICACIÓN MEDIANTE AUXILIO JUDICIAL.
**1.** Cuando los actos de comunicación hayan de practicarse por tribunal distinto del que los hubiere ordenado, se acompañará al despacho la copia o cédula correspondiente y lo demás que en cada caso proceda.

**2.** Estos actos de comunicación se cumplimentarán en un plazo no superior a quince (15) días, contados a partir de su recepción. Cuando no se realice en el tiempo indicado, se habrán de expresar, en su caso, las causas de la dilación.

### Artículo 148.- NULIDAD Y SUBSANACIÓN DE LOS ACTOS DE COMUNICACIÓN.
**1.** Serán nulos los actos de comunicación que no se practicaren con arreglo a lo dispuesto en este Código y pudieren causar indefensión.

**2.** Sin embargo, cuando la persona notificada, citada, emplazada o requerida se hubiera dado por enterada en el asunto, y no denunciase la nulidad de la diligencia en su primera actuación, surtirá ésta desde entonces todos sus efectos, como si se hubiere hecho con arreglo a las disposiciones de este Código.





## PODER JUDICIAL DE HONDURAS

**Artículo 149.- COMUNICACIÓN DE OFICIOS Y MANDAMIENTOS.**

**1.** Los mandamientos y oficios se remitirán directamente a la autoridad o funcionario a que vayan dirigidos. No obstante, si así lo solicitaren, las partes podrán diligenciarlos personalmente.

**2.** En todo caso, la parte a cuya instancia se libren los oficios y mandamientos habrá de satisfacer los gastos que requiera su cumplimiento.

**Artículo 150.- RESPONSABILIDADES.**

**1.** El secretario o funcionario que, en el desempeño de las funciones de comunicación que por este Código se le asignan, diere lugar, por malicia o negligencia, a retrasos o dilaciones indebidas, será corregido disciplinariamente por la autoridad de quien dependa.

**2.** El profesional del derecho que incurriere en dolo o morosidad en los actos de comunicación cuya práctica haya asumido, o no respetare alguna de las formalidades legales establecidas, causando perjuicio a la otra parte o a tercero, será responsable de los daños y perjuicios ocasionados y podrá ser sancionado conforme a lo dispuesto en las normas legales o estatutarias.


## CAPÍTULO III
## ACTOS DE DOCUMENTACIÓN


**Artículo 151.- FE PÚBLICA JUDICIAL.**

**1.** El secretario ostenta la fe pública judicial, mediante la que deja constancia oficial en el expediente de la realización de las actuaciones procesales, por sí o mediante el registro correspondiente, de cuyo funcionamiento será responsable, de la recepción de escritos con los documentos y recibos que les acompañen, así como de la producción de hechos con trascendencia procesal.

**2.** El secretario expedirá copias certificadas y testimonios de las actuaciones no secretas ni reservadas a los interesados.

**3.** El secretario podrá ser sustituido en los términos previstos en la ley.

**Artículo 152.- DOCUMENTACIÓN DE ACTOS PROCESALES NO ESCRITOS.**

**1.** Las actuaciones procesales que no consistan en escritos y documentos se documentarán por medio de actas, diligencias y notas.

**2.** Cuando la ley disponga que se levante acta, se recogerá en ella, con la necesaria extensión y detalle, todo lo actuado. Sin embargo, cuando se trate de las actuaciones





# THE MULTI—LINGUAL GROUP

8 Faneuil Hall Marketplace - Boston, Massachusetts 02109  - Tel.: (617) 973-5077 – Fax: (617) 213-5408
www.themultilingualgroup.com

## AFFIDAVIT

I, the undersigned, Robin R. Randolph, in the city of Richmond, Virginia, make an oath and declare that:

1) I am a legal translator and interpreter certified by the American Translators Association.

2) I earned an M.A. in Translation from the University of Puerto Rico.

3) I am a member of the American Translators Association.

4) I am fluent in both Spanish and English.

5) Attached to this affidavit is an English translation that I completed of the (a) cover page and (b) *Capitulo II: Actos De Comunicación* of the following Spanish-language document, *Codigo Procesal Civil*.

6) My translation is true to the best of my knowledge and ability and represents the content of the document supplied to me by the client.

Signature of Translator

Certification credentials may be verified online at www.atanet.org/verify.

Sworn before me on this ___ day of the month of _November_ of the year 2011

In the City of _Richmond_ , State of _Virginia_ .

NOTARY PUBLIC

My commission expires: 11/30/2011

# EXHIBIT 2

**Legal Documentation and Information Electronic Center**

**Judicial Branch of Honduras**

[Coat of Arms]
**SUPREME COURT OF JUSTICE**
**Republic of Honduras, Central America (C.A.)**

# Honduran Forest Development Corporation Act (Gazette No. 21179 of 01/10/1974)

## Chapter I
## Creation, Purpose, and Domicile

### Article 1

The Honduran Forest Development Corporation (*Corporación Hondureña de Desarrollo Forestal*, "COHDEFOR") is hereby established as a semi-autonomous institution, with its own legal personality and equity.

### Article 2

The purpose of the Corporation shall be optimizing the exploitation of the country's forest resources, ensuring their protection, improvement, conservation, and growth, and generating funds for the funding of state programs, in order to accelerate the country's economic and social development process.

### Article 3

The Corporation shall be the executing body of the Government's forestry policy, and its programs and projects shall be in harmony with the National Development Plan.

### Article 4

The Corporation shall be domiciled in the capital of the Republic, and is established for an indefinite period. Its obligations shall be fully guaranteed by the Government.

Centro Electrónico de Documentación e Información Judicial
Case 1:11-mc-00443-P1   Document 35-1   Filed 05/03/13   Page 29 of 72
Poder Judicial de Honduras



**CORTE SUPREMA DE JUSTICIA**
República de Honduras, C. A.

# Ley de la Corporación Hondureña de Desarrollo Forestal
# (gaceta no.21179 del 10/01/1974)

## Capitulo I
## Creación, Objeto y Domicilio

**Artículo 1**
Créase la Corporación Hondureña de Desarrollo Forestal (COHDEFOR), como institución semi-autónoma, con personalidad jurídica y patrimonio propios.

**Artículo 2**
La Corporación tendrá por objeto hacer un óptimo aprovechamiento de los recursos forestales con que cuenta el país, asegurar la protección, mejora, conservación e incremento de los mismos y generar fondos para el financiamiento de programas estatales, a fin de acelerar el proceso de desarrollo económico y social de la nación.

**Artículo 3**
La Corporación será el organismo ejecutor de la política forestal del Estado, y sus programas y proyectos deberán estar en armonía con el Plan Nacional de Desarrollo.

**Artículo 4**
La Corporación tendrá su domicilio en la capital de la República; su duración será indefinida y sus obligaciones contaran con la más completa garantía del Estado.



**LANGUAGE**

I N N O V A T I O N S

*Helping businesses communicate worldwide™*

## TRANSLATION CERTIFICATION

This is to certify that the translation of the attached document, **Ref: 1266_001**, is to the best of our knowledge and ability, a true and accurate translation of the original text delivered to Language Innovations, LLC by our client.   The original document was translated from **Spanish** into **English** by a professional translator fluent in both the source and target languages and at completion delivered to the client on **April 30, 2013.**

I hereby declare that all statements made herein are of my own knowledge and are true and that all statements made based on information or belief are believed to be true.

Language Innovations, LLC hereby agrees to keep the content of this translation confidential according to ethical and legal standards of the profession of Translation. Language Innovations, LLC agrees not to discuss, evaluate, distribute or reproduce any material included in or related to the translation of this document.

Date:  April 30, 2013

Signature:

Lindsey Crawford
Language Innovations, LLC

Subscribed and sworn before me this _____30th_____ day of __April_____ 20 13 , at Washington, DC.

Notary Public

My Commission expires:  **BRIAN FRIEDMAN**
Notary Public District of Columbia
My Commission Expires July 14, 2013

Limitation of Liability - see terms at http://languageinnovations.com/confidentiality.html

# EXHIBIT 3

[Partially legible stamp in English]

The first printing press arrived in Honduras in 1829. It was installed in Tegucigalpa at the San Francisco Headquarters. The first thing to be printed was a Proclamation from General Morazán, dated December 4, 1829.

# THE GAZETTE

## Official Daily of the Republic of Honduras

### HONDURAN PRESS DEAN
### Director, P. M. Nelson A. Benavides Servellon

The first official Government newspaper was later printed on May 25, 1936, known now as Official Daily THE GAZETTE

| YEAR CI | TEGUCIGALPA, D. C. HONDURAS, SATURDAY, MAY 28, 1977 | VOL. 22,205 |
|---|---|---|

# OFFICE OF THE HEAD OF STATE

## DECREE NUMBER 465

THE HEAD OF STATE, UPON MEETING WITH THE FULL CABINET,

WHEREAS: It has been an ongoing aspiration of the Honduran people to exploit, for everyone's benefit, the country's vast forest reserves, and especially those located in the State of Olancho, which is considered to be one of the largest unexploited forest zones in Latin America, and which can provide occupancy and progress to the zone, as well as generate important resources for the State to employ for the Country's full development;

WHEREAS: That thanks to the Government's and the Armed Forces' determination, and to the unconditional support received from the Inter American Development Bank, the Venezuelan Investment Fund, the International Finance Corporation, the International Bank for Reconstruction and Development, and from other entities and individuals, it is now possible to constitute a company that will commercially exploit the forest resources of Olancho;

WHEREAS: Given the magnitude of the Project and the investment amount required, the majority domestic shareholding, the unavoidable need for foreign capital and technology, and the Latin American multinational projection that is to be given to the Project's development company, it is imperative to issue exceptional legal standards that would take into consideration the above mentioned factors and provide an appropriate, stable, and flexible legal framework that will enable the company's operation while equitably guaranteeing the interests of all stakeholders;

WHEREAS: Within the National Development Plan, the rational and logical exploitation of Olancho's forest resources is of the highest economic, social, and political priority.

THEREFORE: Pursuant to the authority conferred by Decree Law No. 1 of December 6, 1972,

HEREBY DECREES:

Article 1.- Authorize the incorporation of a company whose main purpose shall be the industrial and commercial exploitation, in accordance with the country's laws, of the forest resources located in the reserve zone of Olancho, constituted by the Government through Legislative Decree No. 120 of November 7, 1966. The company may set forth the time and form in which to fulfill their purpose.

# CONTENT

DECREE NUMBER 465

May 1977

### CULTURE, TOURISM, AND INFORMATION

Agreement No. 199 – May 1977

## ECONOMY

Agreements No. 96-77 and 135-77 – March and April 1977

## COMMUNICATIONS, PUBLIC WORKS, AND TRANSPORTATION

Agreements No. 789 through 796 – November 1975

## NOTIFICATIONS

Article 2.- The company shall be incorporated in accordance with the laws of the republic and the stipulations of this Decree.

Article 3.- The company shall be called CORPORACIÓN FORESTAL INDUSTRIAL DE OLANCHO, S.A., and shall operate under the business name "CORFINO." The share capital shall be represented by two classes of shares: class A shares, which at no time may represent less than 51% of the total shares, shall always be registered and owned by the Government of Honduras, whether exercised directly or through the Honduran Forestry Development Corporation, the National Investment Corporation, or any other entity – present or future – under state control; and class B shares, which shall initially be registered shares and may be owned to both Hondurans or foreigners.

Article 4.- The following provisions shall apply to the company:

a) For capital stock increases, it shall operate as a variable stock corporation; however, reductions in paid-in capital stock can only occur through a Special Shareholders Meeting, adopted in the form and adhering to the requirements set forth by the articles of incorporation.

b) The shares may have a nominal or par value other than the one established in article 113 of the Commercial Code, as amended;

c) Class B shares can be converted into bearer shares;

d) At the time of signing the articles of incorporation, ten percent (10%) of the nominal value of each of the registered shares shall be shown via deposit into the Central Bank of Honduras. This percentage shall be paid by each shareholder in the appropriate proportion. The Board of Directors shall decide the date, amount, and all other terms under which the unpaid portion of the shares must be paid in; and,

e) The judicial and extrajudicial representation of the company shall be exercised in the manner set forth by the articles of incorporation.

Article 5.- Once the articles of incorporation are granted, as a formality prior to their registration in the Public Registry of Commerce of the corresponding domicile, they must be submitted for qualification by the Executive, through the Ministry of Finance and Public Credit, along with all documentation related to the articles of incorporation. The Executive shall issue a resolution either qualifying the articles of incorporation and ordering their recording in the corresponding Registry, or denying their qualification.

Article 6.- The articles of incorporation and deeds for capital increase shall be exempt from any kind of tax or duty that may be applicable to them, including those established by the Commercial Code, the Stamps and Stamped Paper Law, the Property and Company Registration Law, the Regulations of the aforementioned laws, and any other legal or administrative provisions. Likewise, authorizing notaries shall be exempt from the obligations imposed upon them by Legislative Decree No. 48 of September 24, 1971, in the sense of charging the minimum fees set forth by the Judicial, Notary, and Administrative Duty.

Article. 7.- Foreign shareholders who own shares in the company that is the subject of this Decree, shall have the following rights:

a) At the request of the shareholder, dividends shall be freely convertible into the currency chosen, at the current exchange rate, using the most favorable Lempira on the date of payment and upon deduction of any appropriate expenses. These dividends may be easily repatriated;

b) On tax matters, they shall enjoy the same treatment as private Honduran shareholders; and

c) In the event the company is liquidated, at the request of the shareholder, his/her corresponding share of the liquidated company assets shall be freely convertible into the currency chosen, at the current exchange rate, using the most favorable Lempira on the date of payment and upon deduction of any appropriate expenses. This amount may be easily repatriated.

Article 8.- The company that is the subject of this Decree must be incorporated by no later than August 30th of this year.

Article 9.- For everything else not covered by this Decree, the company Corporación Forestal Industrial de Olancho, S.A., shall be governed by the provisions set forth in its articles of incorporation and bylaws and, complementarily, by the provisions of the Commercial Code and all other applicable laws.

Article 10.- This Decree shall become effective on the day of its publication in the Official Daily "The Gazette."

Issued in the city of Tegucigalpa, Central District, on the twenty-seventh day of May of nineteen seventy-seven.

THE HEAD OF STATE,
    **JUAN ALBERTO MELGAR CASTRO**

The Minister of the Interior and Justice
    **Alonso Flores Guerra**

The Minister of Foreign Affairs
    **Roberto Palma Gálvez**

The Minister of Defense and National Security
    **Omar Antonio Zelaya R.**

The Minister of Public Educations
    **Lidia Williams de Arias**

The Minister of Finance and Public Credit
    **Porfirio Zavala Sandoval**

The Minister of Economy
    **J. Vicente Díaz Reyes**

The Minister of Communications, Public Works, and Transportation
    **Mario Flores Theresía**

The Minister of Public Health and Social Welfare, by law
    **Rigoberto Alvarado Lozano**

The Minister of Labor and Social Security
    **Adalberto Discua Rodriguez**

The Minister of Natural Resources
    **Rafael Leonardo Callejas**

The Minister of Culture, Tourism, and Information
    **Efraín Lisandro González Muñoz**

The Executive Secretary of the Higher Economic Planning Council
    **Arturo Corleto Moreira**

The Executive Director of the National Agrarian Institute, by law
    **Fabio David Salgado**

Case 1:11-mc-00443-P1   Document 35-1   Filed 05/03/13   Page 35 of 72
Cont Copy

# LA GACETA

La primera imprenta llegó a Honduras en 1829, siendo instalada en Tegucigalpa, en el Cuartel San Francisco, la primera que se imprimió fue una Proclama del General Morazán, con fecha 4 de diciembre de 1829.

Después se imprimió el primer periódico oficial del Gobierno con fecha 25 de mayo de 1830, conocido hoy como Diario Oficial LA GACETA.

## DIARIO OFICIAL DE LA REPUBLICA DE HONDURAS

### DECANO DE LA PRENSA HONDUREÑA

### Director, P. M. NELSON A. BENAVIDES SERVELLON

AÑO CI          TEGUCIGALPA, D. C., HONDURAS, SABADO 28 DE MAYO DE 1977          NÚM. 22,205

---

# JEFATURA DE ESTADO

## DECRETO NUMERO 465

### EL JEFE DE ESTADO, EN CONSEJO DE MINISTROS,

CONSIDERANDO: Que ha sido permanente aspiración del pueblo hondureño el aprovechar, para ventaja de todos, las vastas reservas forestales del país y particularmente la localizada en el Departamento de Olancho, que se considera una de las zonas forestales inexplotadas más grande de América Latina y que puede proveer ocupación y progreso para la zona, así como generar importantes recursos para que el Estado los emplee en el desarrollo integral de la Nación;

CONSIDERANDO: Que gracias al empeño del Gobierno de las Fuerzas Armadas y al apoyo irrestricto recibido del Banco Interamericano de Desarrollo, del Fondo de Inversiones de Venezuela, de la Corporación Financiera Internacional, del Banco Internacional de Reconstrucción y Fomento y de otras entidades y personas, es ahora posible constituir una empresa que explote comercialmente el recurso forestal de Olancho;

CONSIDERANDO: Que dada la magnitud del Proyecto y el monto de inversiones requerido, la participación nacional mayoritaria, la ineludible necesidad de capital y tecnología extranjeras y la proyección multinacional latinoamericana que se pretende dar a la empresa desarrolladora del Proyecto, es indispensable la emisión de normas legales de excepción que tomen en cuenta los factores arriba mencionados y provean un marco jurídico apropiado, estable y elástico, que posibilite la operación de la empresa, garantizando justamente los intereses de todos los participantes;

CONSIDERANDO: Que dentro del Plan Nacional de Desarrollo, la explotación racional y lógica de los recursos forestales de Olancho tiene la más alta prioridad económica, social y política.

POR TANTO: En uso de las facultades que le confiere el Decreto Ley Nº 1 del 6 de diciembre de 1972,

### DECRETA:

Artículo 1º—Autorizar la constitución de una sociedad anónima cuya finalidad principal será el aprovechamiento industrial y comercial, en conformidad con las leyes del país, de los recursos forestales localizados en la zona de Olancho que fue constituida por el Gobierno de la República mediante Decreto Legislativo Nº 120 del 7 de noviembre de 1966. La sociedad podrá establecer las modalidades de tiempo y forma para cumplir su finalidad.

# CONTENIDO

DECRETO Nº 465
Mayo de 1977

CULTURA, TURISMO E INFORMACION
Acuerdo Nº 199 — Mayo de 1977

ECONOMIA
Acuerdos Nos 96-77 y 135-77 Marzo y Abril de 1977

COMUNICACIONES, OBRAS PUBLICAS
Y TRANSPORTE
Acuerdos Del Nº 789 al 796 — Noviembre de 1975

AVISOS

Artículo 2º—La sociedad deberá constituirse de acuerdo con las leyes de la República y las estipulaciones de este Decreto.

Artículo 3º—La sociedad se denominará CORPORACION FORESTAL INDUSTRIAL DE OLANCHO, S. A. y girará bajo el nombre comercial "CORFINO". El capital social estará representado por dos clases de acciones: Las acciones de clase A, que en ningún tiempo podrán representar menos del 51% del total de las acciones, serán siempre nominativas y propiedad del Estado de Honduras, ya sea que ejerza su titularidad directamente o por medio de la Corporación Hondureña de Desarrollo Forestal, la Corporación Nacional de Inversiones, o cualquiera otra entidad bajo control estatal existente o que se cree en el futuro; y las acciones de clase B, que serán inicialmente nominativas y podrán pertenecer a hondureños o extranjeros.

Artículo 4º—Se aplicarán a la sociedad las siguientes disposiciones:

a) Operará como una sociedad anónima de capital variable para los aumentos de capital, pero la disminución del capital pagado sólo se podrá producir por resolución de la Asamblea General Extraordinaria de Accionistas, adoptada en la forma y con los requisitos que establezca la escritura social;

b) Las acciones podrán tener un valor nominal conforme al establecido en el artículo 113 reformado, del Código de Comercio;

c) Las acciones de clase B podrán convertirse en acciones al portador;

2      LA GACETA — REPUBLICA DE HONDURAS. —TEGUCIGALPA, D. C., 28 DE MAYO DE 1977

d) Al momento de firmarse la escritura constitutiva deberá exhibirse, mediante depósito en el Banco Central de Honduras, el (10%) diez por ciento del valor nominal de cada una de las acciones suscritas, porcentaje que se pagará por el correspondiente accionista en su respectiva proporción. El Consejo de Administración decidirá la fecha, monto y demás condiciones en que deberá pagarse la parte insoluta de las acciones; y,

e) La representación judicial y extrajudicial de la sociedad se ejercerá en la forma que lo decida la escritura.

Artículo 5.—Otorgada la escritura pública de constitución, como trámite previo a su inscripción en el Registro Público de Comercio de su domicilio, deberá someterse a calificación del Poder Ejecutivo, por medio de la Secretaría de Hacienda y Crédito Público, acompañando todos los documentos relativos a la escritura. El Poder Ejecutivo resolverá calificando la escritura y ordenando su inscripción en el Registro respectivo, o denegando la calificación.

Artículo 6.—La escritura constitutiva y las de aumento de capital, estarán exentas del pago de toda clase de impuestos o derechos que les pudieran ser aplicables, incluyendo los que establecen el Código de Comercio, la Ley de Papel Sellado y Timbre, la Ley de Registro de la Propiedad y Mercantil, los Reglamentos de dichas leyes y cualquiera otra disposición legal o administrativa. Asimismo, los notarios que las autoricen estarán exentos de la obligación que les impone el Decreto Legislativo N° 48 del 24 de septiembre de 1971, en el sentido de cobrar los honorarios mínimos establecidos por el Arancel Judicial, Notarial y Administrativo.

Artículo 7.—Los accionistas extranjeros, titulares de acciones de la sociedad a que se refiere este Decreto, tendrán los siguientes derechos:

a) El producto de los dividendos será libremente convertible a solicitud del accionista en la moneda que elija, al tipo de cambio vigente con el Lempira que le sea más favorable en la fecha de pago y previa deducción de los gastos que correspondan. Estos dividendos podrán repatriarse libremente.

b) En materia fiscal, tendrán igual trato que los accionistas privados hondureños; y

c) En caso de liquidación de la sociedad, el producto de la cuota de liquidación del haber social que les corresponda, a solicitud del accionista, será libremente convertible en la moneda que elija, al tipo de cambio vigente con el Lempira que le sea más favorable en la fecha de pago, previa deducción de los gastos que correspondan. Este valor podrá repatriarse libremente.

Artículo 8.—La sociedad a que se refiere el presente Decreto deberá estar constituida a más tardar el 30 de agosto del presente año.

Artículo 9.—En todo lo no previsto por este Decreto, la sociedad Corporación Forestal Industrial de Olancho, S. A., se regirá por lo que dispongan su escritura social y estatutos y, supletoriamente, por las disposiciones del Código de Comercio y demás leyes aplicables.

Artículo 10.—El presente Decreto entrará en vigencia el día de su publicación en el Diario Oficial "La Gaceta".

Dado en la ciudad de Tegucigalpa, Distrito Central, a los veintisiete días del mes de mayo de mil novecientos setenta y siete.

EL JEFE DE ESTADO,

JUAN ALBERTO MELGAR CASTRO

El Secretario de Estado en el Despacho de Gobernación y Justicia,

Alonso Flores Guerra

El Secretario de Estado en el Despacho de Relaciones Exteriores,

Roberto Palma Gálvez

El Secretario de Estado en el Despacho de Defensa Nacional y Seguridad Pública,

Omar Antonio Zelaya R.

El Secretario de Estado en el Despacho de Educación Pública,

Lidia Williams de Arias

El Secretario de Estado en el Despacho de Hacienda y Crédito Público,

Porfirio Zavala Sandoval

El Secretario de Estado en el Despacho de Economía,

J. Vicente Díaz Reyes

El Secretario de Estado en el Despacho de Comunicaciones, Obras Públicas y Transporte,

Mario Flores Theresín

El Secretario de Estado en el Despacho de Salud Pública y Asistencia Social, por ley,

Rigoberto Alvarado Lozano

El Secretario de Estado en el Despacho de Trabajo y Previsión Social,

Adalberto Discua Rodríguez

El Secretario de Estado en el Despacho de Recursos Naturales,

Rafael Leonardo Callejas

El Secretario de Estado en el Despacho de Cultura, Turismo e Información,

Efraín Lisandro González Muñoz

El Secretario Ejecutivo del Consejo Superior de Planificación Económica,

Arturo Corleto Moreira

El Director Ejecutivo del Instituto Nacional Agrario, por Ley,

Fabio David Salgado



# LANGUAGE

I N N O V A T I O N S
*Helping businesses communicate worldwide™*

## TRANSLATION CERTIFICATION

This is to certify that the translation of the attached document, **Ref: 1264_001**, is to the best of our knowledge and ability, a true and accurate translation of the original text delivered to Language Innovations, LLC by our client.   The original document was translated from **Spanish** into **English** by a professional translator fluent in both the source and target languages and at completion delivered to the client on **April 30, 2013.**

I hereby declare that all statements made herein are of my own knowledge and are true and that all statements made based on information or belief are believed to be true.

Language Innovations, LLC hereby agrees to keep the content of this translation confidential according to ethical and legal standards of the profession of Translation. Language Innovations, LLC agrees not to discuss, evaluate, distribute or reproduce any material included in or related to the translation of this document.

Date:  April 30, 2013

Signature:

Lindsey Crawford
Language Innovations, LLC

Subscribed and sworn before me this _____30th_____ day of __April_____ 20 13 , at Washington, DC.

Notary Public

My Commission expires:  BRIAN FRIEDMAN
Notary Public District of Columbia
My Commission Expires July 14, 2013

Limitation of Liability - see terms at http://languageinnovations.com/confidentiality.html

# EXHIBIT 4

**Section A - /illegible/ and Laws**

The Gazette – Republic of Honduras – Tegucigalpa, M.D.C., February 26, 2008 – No. 31,544

**THEREFORE,**

**ENACTS:**

**The following:**

**FORESTRY LAW - PROTECTED AREAS AND WILDLIFE**

**TITLE I**
**GENERAL PROVISIONS**

**CHAPTER I**
**PURPOSE AND SCOPE OF APPLICATION**

**ARTICLE 1.- PURPOSE OF THE LAW.-** This Law sets forth the legal regime to which the administration and management of Forestry Resources, Protected Areas, and Wildlife will adhere, including their protection, restoration, exploitation, conservation, and promotion, encouraging sustainable development, pursuant to the country's social, economic, environmental, and cultural interests.

**ARTICLE 201.- ON THE ASSETS OF THE STATE FORESTRY ADMINISTRATION / HONDURAN FORESTRY DEVELOPMENT CORPORATION (AFE-COHDEFOR) AND OTHER FINANCIAL RESOURCES.** The assets of the State Forestry Administration/Honduran Forestry Development Corporation (AFE-COHDEFOR) and any programs and projects related to Forestry, Protected Areas, and Wildlife funded with internal or external resources, that as of the effective date of this Law are under the administration of any State agency or entity, except municipal agencies or entities, shall become part of the assets of the National Institute for Forest Conservation and Development, Protected Areas, and Wildlife (*Instituto Nacional de Conservación y Desarrollo Forestal, Áreas Protegidas y Vida Silvestre*, "ICF") and shall be administered by said Institute as of the effective date of this Law. Any liabilities of the State Forestry Administration/Honduran Forestry Development Corporation (AFE-COHDEFOR) shall be assumed by the Ministry of Finance.

POR TANTO,

### DECRETA:

La siguiente:

# LEY FORESTAL, ÁREAS PROTEGIDAS Y VIDA SILVESTRE

### TÍTULO I
### DISPOSICIONES GENERALES

### CAPÍTULO I
### FINALIDAD Y ÁMBITO DE APLICACIÓN

**ARTÍCULO 1.- FINALIDAD DE LA LEY.-** La presente Ley establece el régimen legal a que se sujetará la administración y manejo de los Recursos Forestales, Áreas Protegidas y Vida Silvestre, incluyendo su protección, restauración, aprovechamiento, conservación y fomento, propiciando el desarrollo sostenible, de acuerdo con el interés social, económico, ambiental y cultural del país.

**ARTÍCULO 201.- DE LOS ACTIVOS DE LA ADMI-
NISTRACIÓN FORESTAL DEL ESTADO/CORPO-
RACIÓN HONDUREÑA DE DESARROLLO FORESTAL
(AFE-COHDEFOR) Y OTROS RECURSOS FINAN-
CIEROS.** Los activos de la Administración Forestal del Estado/
Corporación Hondureña de Desarrollo Forestal (AFE-
COHDEFOR) y todos aquellos programas y proyectos
relacionados con el tema Forestal, Áreas Protegidas y Vida
Silvestre que sean financiados con fondos internos o externos,
que a la vigencia de la presente Ley estén siendo administrados
por cualquier dependencia o ente Estatal con la sola excepción
de los municipales, pasarán a formar parte del Patrimonio del
Instituto Nacional de Conservación y Desarrollo Forestal, Áreas
Protegidas y Vida Silvestre (ICF) y a ser administrados por éste
a partir de la vigencia de la presente Ley. Los pasivos de la
Administración Forestal del Estado/Corporación Hondureña de
Desarrollo Forestal    (AFE-COHDEFOR) serán asumidos por
la Secretaría de Estado en el Despacho de Finanzas.



# LANGUAGE

INNOVATIONS

*Helping businesses communicate worldwide*™

### TRANSLATION CERTIFICATION

This is to certify that the translation of the attached document, **Ref: 1263_001**, is to the best of our knowledge and ability, a true and accurate translation of the original text delivered to *Language Innovations, LLC* by our client.   The original document was translated from **Spanish** into **English** by a professional translator fluent in both the source and target languages and at completion delivered to the client on **April 30, 2013.**

I hereby declare that all statements made herein are of my own knowledge and are true and that all statements made based on information or belief are believed to be true.

Language Innovations, LLC hereby agrees to keep the content of this translation confidential according to ethical and legal standards of the profession of Translation. Language Innovations, LLC agrees not to discuss, evaluate, distribute or reproduce any material included in or related to the translation of this document.

Date:  April 30, 2013

Signature:

Lindsey Crawford
Language Innovations, LLC

Subscribed and sworn before me this _____30th_____ day of _April_____ 20_13_, at Washington, DC.

Notary Public

My Commission expires:  **BRIAN FRIEDMAN**
Notary Public District of Columbia
My Commission Expires July 14, 2013



Limitation of Liability - see terms at http://languageinnovations.com/confidentiality.html

1725 I Street, NW   Suite 300   Washington, DC 20006   202.349.4180 tel   888.349.4180 toll free   202.349.4182 fax
translate@languageinnovations.com email   www.languageinnovations.com web

# EXHIBIT 5

[Partially legible logo]

**CHAMBER OF COMMECE AND INDUSTRY OF TEG[UCIGALPA]**
**PARTNER CENTER**
**COMMERCIAL REGISTRY**

[Partially legible stamp: Chamber of Commerce /illegible/ Tegucigalpa – Commercial Registry – Francisco Morazán

Submitted on due date,


### COMPLETE CERTIFICATION OF RECORD


The undersigned Registrar of the Commercial Registry of the State of Francisco Morazán, at the Chamber of Commerce and Industry of Tegucigalpa, in its capacity as a Partner Center associated with the Property Institute, hereby and upon request, **CERTIFIES the registration of record number 73, volume number 624, of the Register of Business Companies.**


[Illegible signature]

[Round stamp]: Chamber of Commerce and Industry of Tegucigalpa, Partner Center, I.P. – Commercial Registry – Francisco Morazán

[Round stamp]: Chamber of Commerce and Industry of Tegucigalpa, Partner Center, I.P. – Commercial Registry – Francisco Morazán

000945

INTERNATIONAL COMPLAINT. Mr. Roberto Medina stated: "regarding this International legal complaint, I expect to have a legal answer by mid January 2006. Regarding potential solutions, I hired an International Lawyer with experience in international issues, so that he may give us his opinion." Attorney Rossina Reyes said

[Round stamp]: Chamber of Commerce and Industry of Tegucigalpa, Partner Center, I.P. – Commercial Registry – Francisco Morazán

000946

Engineer Medina: "Look, Counsel, as of today, I am yet to receive any requests from you wanting to review the documents I have in my office. Once we review them in my office, then we can talk, because it is a very large file. I would like for you to see it." Attorney Rossina Reyes answered by saying: "Engineer, please don't forget that in the end, it will be the Supreme Court of Honduras who will issue a judgment and right now it is not necessary to incur such an expense, in other words, paying an international lawyer, thus expending assets or money that may perhaps be better used in another matter, because in this case we have already explained the essential requirements for that judgment to be upheld." Mr. Roberto Medina said: "there was an assistant manager here who spoke personally with the judge in Mississippi, in the United States, and I know for a fact that that associate manager signed a note for him to be represented in the United States, so I believe there's someone who defended himself." Attorney René Velásquez Díaz took the floor and stated: "we know that in order to execute a judgment issued in foreign courts here in Honduras, it is necessary for the Court to approve that judgment, which is called *Pareatis* Decree, for which purpose various requirements must be met, such as having reciprocity agreements or international conventions signed with those countries, or that the judgment in the proceeding not be a judgment by default due to the defendant's contempt of court, but when Engineer Roberto Medina told me that someone had granted a power of attorney to a law firm in the United States, I told myself that this is not my business, because up there they respect their system, so I withdrew and let someone else take care of that." Engineer Roberto Medina: "the person who signed that document with the American law firm was Mr. Humberto Figueroa, assistant manager of COHDEFOR." Attorney Maria Teresa Bulnes took the floor and stated: "In the case record, there is a copy

[Round stamp]: Chamber of Commerce and Industry of Tegucigalpa, Partner Center, I.P. – Commercial Registry -- Francisco Morazán

000947

of a fax that Mr. Williams Simmons II sent to his attorney, Ivis Discua Barrillas, in which he makes a comment to the effect that he (Williams Simmons II) has sought an Attorney to defend him and the Hondurans, and that for that purpose, each person who decides to hire the attorney must pay a percentage of the attorney fees, and that the attorney fees that said Attorney would charge to defend that case would be US$ 250.00 per hour, and that the estimated number of hours is 400 to 800 hours, and that he already informed President Madura and the Embassy about it, but is yet to receive an answer. One more thing, according to Simmons no one was defended, and it is precisely based on that point that that judgment can be overthrown." Engineer Medina said: "so you don't believe what I'm telling you. If you tell me that you need to see that document, you can do so, since I compiled all those documents and I do not want to be irresponsible, so that tomorrow when that lawsuit gets here, you go and ask what did the Board of Liquidators do and why didn't it anticipate the situation, and that's why I made the decision of hiring an International Lawyer – to prevent what may happen with that case, I am taking the legal steps on behalf of Honduras and of the partners present here.

CÁMARA DE COMERCIO E INDUSTRIA DE TEG
CENTRO ASOCIADO
REGISTRO MERCANTIL

Presentada en su fecha,

## CERTIFICACION INTEGRA DE ASIENTO

El Infrascrito Registrador del Registro Mercantil del Departamento de Francisco Morazán, en la Cámara de Comercio e Industria de Tegucigalpa, en su condición de Centro Asociado al Instituto de la Propiedad, por este medio y en atención a lo solicitado **CERTIFICA la inscripción numero 73 tomo número 624 del Libro de Registro Comerciantes Sociales.**



PAPEL SELLADO OFICIAL
**CINCO LEMPIRAS**
2004 - 2007

№ 1604419



COT 945

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22  DEMANDA INTERNACIONAL  Don Roberto Medina informa  En cuanto a esta    demanda Legal
23  Internacional, si espero que para mediados de enero 2006, tener una respuesta legal, en cuanto
24  a cuales son las posibles soluciones, contraté un Jurista Internacional con experiencia en
25  problemas internacionales para que nos de la opinión  La Abogada Rossina Reyes, dice

607946

1  Ingeniero Medina, recuerde que en la sesión pasada dijimos que no había necesidad de

2  contratar un jurista interracial ya que hay un tramite a priori aquí en Honduras, así que hay que

3  esperar que dicha sentencia si realmente existe, pues que venga del exterior para Honduras y

4  cuando eso llegue aquí se defenderá a través del Auto de Pariatis así que es innecesario

5  contratar un Abogado en el extranjero para eso. El Ingeniero Medina responde. Mira Abogada

6  hasta hoy yo no he recibido ninguna solicitud de ustedes para querer ver los documentos que

7  tengo en mi oficina, cuando los veamos en la oficina después podemos hablar, porque es un

8  legajo de documentos grande, me gustaría que lo viera. La Abogada Rossina Reyes le responde

9  diciendo no olvide Ingeniero que al final siempre va a ser la Corte Suprema de Honduras quien

10  va a resolver y en estos momentos no se requiere de hacer un gasto como ese o sea pagar un

11  jurista internacional gastando tal vez bienes o dinero que pueda utilizarse en otro asunto, pues

12  aquí ya se han explicado los requisitos esenciales para que prospere esa sentencia. Don

13  Roberto Medina. dice aquí hubo un sub - Gerente que él personalmente se puso a hablar con el

14  juez de Misisipi, en Estados Unidos, y se, que ese Sub- Gerente firmó una nota para que lo

15  representara en los Estados Unidos así que creo que hay alguien que se defendió. Toma la

16  palabra el Abogado René Velásquez Díaz y dice. sabemos que para ejecutar una sentencia

17  dictada en los tribunales de extranjeros aquí en Honduras es necesario que la Corte de su

18  aprobación de esa sentencia que se llama el auto panatis para lo cual se debe de cumplir con

19  determinados requisitos, como ser que haya reciprocidad o convenios internacionales con esos

20  países, otro es que el juicio no se haya declarado en rebeldía del demandado, pero cuando el

21  Ingeniero Roberto Medina me dijo que alguien habían dado poder a un bufete en Estados

22  Unidos, me dije, este asunto no es conmigo, porque allá respetan su sistema, por eso yo me

23  aparté y que fuera otro el que se encargara de eso. El Ingeniero Roberto Medina, el que firmó

24  ese documento con el bufete gringo fue el señor Humberto Figueroa Sub-Gerente de

25  COHDEFOR. En uso de la palabra la Abogada María Teresa Bulnes dice. Hay en archivos copia



**PAPEL SELLADO OFICIAL**

## CINCO LEMPIRAS
### 2004 - 2007



GGi 847

№ 1604419

1 de un fax que el señor Williams Simmons II, envía a su Abogado Ivis Discua Barillas, en el que

2 comenta que él (Williams Simmons II) has buscado Abogado para que lo defienda a él y a los

3 hondureños y que para ello deben de pagar un porcentaje de los honorarios cada uno que le

4 contesten si lo contrata o no, y que los honorarios que ese Abogado cobraría por defender ese

5 caso sería US$ 250.00 hora y que el tiempo estimado es de 400 a 800 horas y que ya comunicó

6 eso al Presidente Madura y a la Embajada pero que no ha tenido ninguna respuesta,  otro

7 asunto, según Simmons nadie fue defendido y justamente en base a ese punto es que puede

8 echarse abajo ese sentencia. El Ingeniero Medina dice  entonces lo que yo digo no lo creen, si

9 me dicen que necesitan ver ese documento pueden hacerlo, pues hice una recopilación de esos

10 documentos y no quiero pecar de irresponsable, que mañana cuando venga esa demanda, se

11 pregunten que hizo la Junta Liquidadora y por que no se anticipó a los hechos, por eso tome la

12 decisión de contratar un Abogado Internacional, para prevenir lo que pueda pasar con ese caso,

13 las cuestiones legales las estoy haciendo en beneficio de Honduras, y de los socios aquí

14 presentes.



# LANGUAGE

# INNOVATIONS

*Helping businesses communicate worldwide™*

## TRANSLATION CERTIFICATION

This is to certify that the translation of the attached document, **Ref: 1267_001**, is to the best of our knowledge and ability, a true and accurate translation of the original text delivered to Language Innovations, LLC by our client. The original document was translated from **Spanish** into **English** by a professional translator fluent in both the source and target languages and at completion delivered to the client on **May 2, 2013.**

I hereby declare that all statements made herein are of my own knowledge and are true and that all statements made based on information or belief are believed to be true.

Language Innovations, LLC hereby agrees to keep the content of this translation confidential according to ethical and legal standards of the profession of Translation. Language Innovations, LLC agrees not to discuss, evaluate, distribute or reproduce any material included in or related to the translation of this document.

Date: *May 2, 2013*

Signature: *[signature]*

Lindsey Crawford
Language Innovations, LLC

Subscribed and sworn before me this *2nd* day of *May* 2013, at Washington, DC.

*[signature]*

Notary Public

My Commission expires: **BRIAN FRIEDMAN**
Notary Public District of Columbia
My Commission Expires July 14, 2013

BRIAN FRIEDMAN
COMMISSION EXPIRES
NOTARY
PUBLIC
07-14-2013
DISTRICT OF COLUMBIA

Limitation of Liability - see terms at http://languageinnovations.com/confidentiality.html

1725 I Street, NW   Suite 300   Washington, DC 20006   202.349.4180 tel   888.349.4180 toll free   202.349.4182 fax
translate@languageinnovations.com email   www.languageinnovations.com web

# EXHIBIT 6

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

CORTEZ BYRD and SIMMONS LUMBER COMPANY, S. A.                    PLAINTIFFS

V.                                                    CIVIL ACTION NO. 3:97cv415WS

CORPORACION FORESTAL y INDUSTRIAL de OLANCHO, S. A.
(CORFINO), WILLIAM E. SIMMONS, III, CARL SWAN,
ISRAEL PACHECO, ALBERTO FIGUEROA,
JOHN PEARSON, MAYRA BERLIOZ, OSCAR ALVARENGA
and MADERAS de EXPORTACION, S. A                                 DEFENDANTS

## MOTION TO DISMISS

Pursuant to Rule 12(b)(1), (b)(2), (b)(3) and (b)(6), Fed. R. Civ. P., Defendants Corporaction

Forestal y Industrial de Olancho, S. A. (hereinafter "CORFINO"), Israel Pacheco (hereinafter

"Pacheco") and Alberto Figueroa (hereinafter "Figueroa") submit this Motion to Dismiss and

support thereof would show the Court as follows:

1.      This action was commenced by Plaintiff Cortez Byrd (hereinafter "Byrd") and

Simmons Lumber Company, S. A. (hereinafter "Simmons Lumber") in the Circuit Court of Lincoln

County, Mississippi. Byrd and Simmons Lumber named nine Defendants in the lawsuit, including

CORFINO, Pacheco and Figueroa. The Plaintiffs' claims are premised upon an unsuccessful venture

involving the operation of a sawmill in Honduras. CORFINO owns the sawmill and had leased it

to Williams E. Simmons, III (one of the defendants in this suit), and he had assigned his interest in

the lease to Simmons Lumber, a Honduran corporation.

2.      In their suit, Byrd and Simmons Lumber seek damages for the alleged violation of

the Racketeer Influenced and Corrupt Organizations Act ("RICO"), tortious interference with

contract and business relations, conspiracy to interfere with contractual relations, illegal conversion

046

of property, breach of contract, breach of a duty of good faith and fair dealing, and breach of fiduciary duties. *See* Complaint, p. 1.

3.     On June 13, 1997, the Defendants removed the action from the Circuit Court of Lincoln County to this Court. Federal court subject matter jurisdiction was premised upon the RICO allegations which were made against all Defendants. *See* 28 U.S.C. § 1331 and 28 U.S.C. § 1441.

4.     In addition, CORFINO, Pacheco and Figueroa fall within the definition of "foreign state" as set forth in the Foreign Sovereign Immunities Act ("FSIA"). *See* 28 U.S.C. § 1603. As a result, they had an independent basis for removing this action. *See* 28 U.S.C. § 1441(d).

5.     CORFINO is a corporation organized and existing under the laws of the Republic of Honduras. As the Complaint alleges, more than 90% of the shares of CORFINO are owned by the Republic of Honduras through a governmental entity known as Corporacion Hondureña de Desarrollo Forestal. *See* Complaint, ¶ 14.

6.     As a result, CORFINO meets the definition of foreign state as set forth in 28 U.S.C. § 1603. Specifically, it is an agency or instrumentality of the Republic of Honduras as defined in Section 1603(b), which means it meets the definition of foreign state under Section 1603(a).

7.     As the Complaint alleges, Pacheco is an adult resident citizen of the Republic of Honduras. *See* Complaint, ¶ 6. Additionally, at all relevant times, Pacheco was the Executive Vice President of CORFINO. *See* Complaint, ¶ 14.

8.     As set forth in the Complaint, Figueroa is an adult resident citizen of the Republic of Honduras. *See* Complaint, ¶ 9. At all relevant times, Figueroa was the President of CORFINO. *See* Complaint ¶ 14.

047

9.    As a result, both Pacheco and Figueroa meet the definition of foreign state as set forth in the FSIA. Specifically, with respect to their actions as described in the Complaint, Pacheco and Figueroa were acting in their capacity as officers of CORFINO. Therefore, they fall within the judicial interpretation of the phrase "agency or instrumentality" in Section 1603(b).

10.    The FSIA provides the only method by which courts of the United States may exercise personal jurisdiction over foreign states and subject matter jurisdiction over claims against foreign states. Pursuant to the FSIA, foreign states are immune from suit in the United States unless the plaintiff's claims fall within certain exceptions set forth in the FSIA. In the present case, none of the claims of Byrd or Simmons Lumber against CORFINO, Pacheco or Figueroa fall within the statutory exceptions.

11.    As a result, CORFINO, Pacheco and Figueroa are entitled to be dismissed with prejudice because this Court lacks both personal jurisdiction over them and subject matter jurisdiction over the claims against them. Further, because these Defendants are immune from suit in the courts of the United States, the Complaint fails to state a claim or cause of action against them upon which relief can be granted.

12.    Additionally, neither CORFINO, Pacheco or Figueroa have "minimum contacts" with the United States, and, therefore, the exercise of personal jurisdiction over them would be contrary to the due process clause of the United States Constitution.

13.    Additionally, because the claims of Plaintiff Simmons Lumber are premised upon CORFINO's obligations under the lease on the sawmill in Honduras, venue is improper in this Court because the lease contains a "forum selection" clause providing that the dispute should be resolved by a Honduran court.

3

048

14.   In support of this Motion, these Defendants submit the following:

Exhibit "1" - Affidavit of Armando Matute, President of CORFINO;

Exhibit "2" - Affidavit of Israel Pacheco; and

Exhibit "3" - Affidavit of Alberto Figueroa.

WHEREFORE, PREMISES CONSIDERED, Defendants CORFINO, Pacheco, and Figueroa request that this Court dismiss them with prejudice from this action on the grounds that:

(a)   This Court lacks subject matter jurisdiction over the claims against them;

(b)   This Court lacks personal jurisdiction over them;

(c)   Due to the existence of sovereign immunity under the FSIA, the Complaint fails to state a claim or cause of action upon which relief may be granted; and

(d)   The claims of Plaintiff Simmons Lumber must be dismissed because this Court is an improper venue in the light of the "forum selection" clause in the lease on the sawmill.

Respectively submitted,

CORPORACION FORESTAL y INDUSTRIAL de OLANCHO, S. A.; ISRAEL PACHECO; and ALBERTO FIGUEROA

By: _____
THOMAS L. KIRKLAND, JR.

By: _____
S. CRAIG PANTER

049

OF COUNSEL:

Thomas L. Kirkland, Jr.
MS Bar No. 4181
S. Craig Panter
MS Bar No. 3999
KIRKLAND & BARFIELD, P. A.
1000 Plaza Building
120 North Congress St.
Post Office Drawer 22989
Jackson, MS 39225-2989
Telephone: (601) 352-7500
Facsimile: (601) 353-6235

### CERTIFICATE OF SERVICE

I, S. Craig Panter, counsel for the Defendants, Corporacion Forestal y Industrial de Olancho,

S. A., Israel Pacheco and Alberto Figueroa, do hereby certify that I have this date caused to be hand-

delivered, a true and correct copy of the foregoing document to:

John L. Maxey, II
Maxey, Wann & Begley, PLLC
210 E. Capitol Street, Suite 1900
P. O. Box 3977
Jackson, MS 39207-3977

Glenn Gates Taylor
C. Dale Shearer
Copeland, Cook, Taylor & Bush
1700 Capital Towers
125 S. Congress Street
Post Office Box 2132
Jackson, MS 39225-2132

SO CERTIFIED, this ___21 st___ day of July, 1997.

_____
S. Craig Panter

5

050

# EXHIBIT 7



Directorate of Intelligence



# Chiefs of State & Cabinet Members

OF FOREIGN GOVERNMENTS

A DIRECTORY

*DI CS 2013-1*
*Supercedes DI CS 2012-12*
*January 2013*

# *Chiefs of State &*
# *Cabinet Members*

## OF FOREIGN GOVERNMENTS

### A DIRECTORY

Information received as of 3 January 2013
has been used in preparation of this directory.

*DI CS 2013-1*
*Supercedes DI CS 2012-12*
*January 2013*

# PREFACE

The *Chiefs of State and Cabinet Members of Foreign Governments* directory is intended to be used primarily as a reference aid and includes as many governments of the world as is considered practical, some of them not officially recognized by the United States. Regimes with which the United States has no diplomatic exchanges are indicated by the initials NDE.

Governments are listed in alphabetical order according to the most commonly used version of each country's name. The spelling of the personal names in this directory follows transliteration systems generally agreed upon by US Government agencies, except in the cases in which officials have stated a preference for alternate spellings of their names.

NOTE:    Although the head of the central bank is listed for each country, in most cases he or she is not a Cabinet member. Ambassadors to the United States and Permanent Representatives to the UN, New York, have also been included.

## KEY TO ABBREVIATIONS

| | | | |
|---|---|---|---|
| Adm. | Admiral | Govt. | Government |
| Admin. | Administrative, Administration | Intl. | International |
| Asst. | Assistant | Lt. | Lieutenant |
| Brig. | Brigadier | Maj. | Major |
| Capt. | Captain | Mar. | Marshal |
| Cdr. | Commander | Min. | Minister, Ministry |
| Chmn. | Chairman | NDE | No Diplomatic Exchange |
| Col. | Colonel | Org. | Organization |
| Del. | Delegate | Pres. | President |
| Dep. | Deputy | Prof. | Professor |
| Dept. | Department | RAdm. | Rear Admiral |
| Dir. | Directory | Ret. | Retired |
| Div. | Division | Rev. | Reverend |
| Dr. | Doctor | Sec. | Secretary |
| Fd. Mar. | Field Marshal | Sr. | Senior |
| Fed. | Federal | VAdm. | Vice Admiral |
| Gen. | General | VMar. | Vice Marshal |

## Haiti (continued)

Min. of Culture ................................................................ Jean Mario DUPUY
Min. of the Economy & Finance ........................................ Marie Carmelle JEAN-MARIE
Min. of Environment ........................................................ Jean Vilamond HILAIRE
Min. of Foreign Affairs & Worship .................................. Pierre-Richard CASIMIR
Min. of Haitians Living Abroad ........................................ Daniel SUPPLICE
Min. of Interior & Territorial Collectivities .................... Ronsard ST.-CYR
Min. of Justice & Public Security .................................... Jean Renel SANON
Min. of National Defense .................................................. Jean Rodolphe JOAZILE
Min. of National Education & Professional Training ........ Vanneur PIERRE
Min. of Planning & External Cooperation ........................ Laurent LAMOTHE
Min. of Public Health & Population .................................. Florence Duperval GUILLAUME
Min. of Public Works, Transport, & Energy ...................... Jacques ROUSSEAU
Min. of Social Affairs & Labor ........................................ Josepha Raymond GAUTHIER
Min. of Tourism ................................................................ Stephanie Balmir VILLEDROUIN
Min. of Women's Affairs & Rights .................................... Yanick MEZIL
Min. of Youth, Sports, & Civic Action .............................. Rene Jean ROOSEVELT
Min.-Del. to the Prime Min. in Charge of Promoting the Peasantry ............ Marie Mimose FELIX
Min.-Del. to the Prime Min. in Charge of Relations With Parliament .......... Ralph Ricardo THEANO
Min.-Del. to the Prime Min. for Human Rights & the Fight Against
    Extreme Poverty ........................................................ Marie Carmelle Rose Anne AUGUSTE
Governor, Bank of the Republic of Haiti .......................... Charles CASTEL
Ambassador to the US ...................................................... Paul ALTIDOR
Permanent Representative to the UN, New York .............. Jean Wesley CAZEAU

## Holy See (Vatican City)

Supreme Pontiff, Roman Catholic Church ........................ BENEDICT XVI, *Pope*
Sec. of State .................................................................... Tarcisio BERTONE, *Cardinal*
Sec. for Relations With States ........................................ Dominique MAMBERTI, *Archbishop*
Apostolic Nuncio to the US .............................................. Carlo Maria VIGANO, *Archbishop*
Permanent Observer to the UN, New York ........................ Francis Assisi CHULLIKATT, *Archbishop*

## Honduras

Pres. .................................................................................. Porfirio LOBO Sosa
Vice Pres. .......................................................................... Maria Antonieta GUILLEN de Bogran
Min. of Agriculture & Livestock ...................................... Jacobo REGALADO
Min. of Culture, Arts, & Sports ........................................ Tulio Mariano GONZALES
Min. of Defense ................................................................ Marlon PASCUA Cerrato
Min. of Education .............................................................. Marlon ESCOTO
Min. of Finance ................................................................ Wilfredo CERRATO
Min. of Foreign Relations ................................................ Arturo CORRALES Alvarez
Min. of Govt. & Justice .................................................... Africo MADRID
Min. of Health .................................................................. Roxana ARAUJO
Min. of Industry & Commerce .......................................... Jose LAVAIRE
Min. of Justice & Human Rights ...................................... Ana PINEDA
Min. of Labor & Social Security ...................................... Felicito AVILA
Min. of Natural Resources & Environment ...................... Rigoberto CUELLAR
Min. of the Presidency ...................................................... Maria Antonieta Guillen de BOGRAN
Min. of Public Works, Transportation, & Housing ............ Miguel Angel GAMEZ
Min. of Security ................................................................ Pompeyo BONILLA Reyes
Min. of Tourism ................................................................ Nelly JEREZ
Attorney Gen. .................................................................... Luis RUBI
Pres., Central Bank .......................................................... Maria Elena MONDRAGON
Ambassador to the US ...................................................... Jorge Ramon HERNANDEZ Alcerro
Permanent Representative to the UN, New York .............. Mary Elizabeth FLORES Flake

43

# EXHIBIT 8

## US embassy cable - 09TEGUCIGALPA87

**HONDURAN CONGRESS SELECTS NEW ATTORNEY GENERAL**

|  |  |
|---|---|
| **Identifier:** | 09TEGUCIGALPA87 |
| **Wikileaks:** | View 09TEGUCIGALPA87 at Wikileaks.org |
| **Origin:** | Embassy Tegucigalpa |
| **Created:** | 2009-02-10 14:01:00 |
| **Classification:** | CONFIDENTIAL |
| **Tags:** | PGOV KCRM KJUS HO |
| **Redacted:** | This cable was not redacted by Wikileaks. |

```
VZCZCXRO7450
PP RUEHLMC
DE RUEHTG #0087/01 0411401
ZNY CCCCC ZZH
P 101401Z FEB 09
FM AMEMBASSY TEGUCIGALPA
TO RUEHC/SECSTATE WASHDC PRIORITY 9218
INFO RUEHZA/WHA CENTRAL AMERICAN COLLECTIVE PRIORITY
RUEABND/DEA HQS WASHINGTON DC PRIORITY
RUMIAAA/CDR USSOUTHCOM MIAMI FL PRIORITY
RUMIAAA/CDR USSOUTHCOM FL//CINC/POLAD// PRIORITY
RUEAHND/CDRJTFB SOTO CANO HO PRIORITY
RUEAIIA/CIA WASHDC PRIORITY
RUEATRS/DEPT OF TREASURY WASHDC PRIORITY
RUEAWJA/DEPT OF JUSTICE WASHDC PRIORITY
RHEFDIA/DIA WASHINGTON DC PRIORITY
RHMFISS/DIRJIATF SOUTH PRIORITY
RUEIDN/DNI WASHINGTON DC PRIORITY
RUMIAAA/HQ USSOUTHCOM J5 MIAMI FL PRIORITY
RUEKJCS/JOINT STAFF WASHDC PRIORITY
RUEHLMC/MILLENNIUM CHALLENGE CORP WASHINGTON DC PRIORITY 0892
RHEHNSC/NSC WASHDC PRIORITY
RUEKJCS/SECDEF WASHDC PRIORITY
RUMIAAA/USSOUTHCOM MIAMI FL PRIORITY


C O N F I D E N T I A L SECTION 01 OF 02 TEGUCIGALPA 000087


SIPDIS

E.O. 12958: DECL: 02/09/2019
TAGS: PGOV, KCRM, KJUS, HO
SUBJECT: HONDURAN CONGRESS SELECTS NEW ATTORNEY GENERAL

REF: TEGUCIGALPA 56

Classified By: Ambassador Hugo Llorens, reasons 1.4 (b & d)
```

1. (C) Summary.  The Honduran Congress elected Luis Alberto Rubi Avila and Roy David Urtecho Lopez as new Attorney General and deputy, respectively, on February 8 from candidates selected by a constitutionally-mandated proposing board.  Following tradition, the two candidates each come from one of the two major parties and alternated the party split from the last Attorney General and deputy.  Neither is well-known publicly, but they are party stalwarts.  Both appear to have good reputations, at least at this early stage.  The positions are important for a number of Embassy programs.  Congress moved surprisingly quickly on the nominations, probably reflecting a desire to avoid a fight similar to the one that took place over the recent Supreme Court election and to avoid public debate on the candidates' qualifications.  End Summary.

2.  (U) The Honduran Congress elected Luis Alberto Rubi Avila and Roy David Urtecho Lopez as the country's new Attorney General and Assistant Attorney General, respectively on February 8 from a list of candidates submitted by a constitutional-mandated board consisting of independent government and university officials.  The two main parties, Liberal and National, came to an agreement on the candidates based on the custom of selecting one from each party and alternating per term.  As a National served as Attorney General last term, it was the Liberal's turn; Rubi was their candidate.  The Nationalists chose Urtecho.  Both are well connected within their parties.  Rubi's mentor is former President Carlos Flores, who continues to hold great influence over the party and is also a mentor of Liberal presidential candidate Elvin Santos.  Rubi is a former Congress deputy and was a member of the country's Supreme Court from 1998 to 2002.  Most recently he has been in private practice.  Urtecho has been serving as an appellate court judge and teaching law at the national university.

3. (U) The list submitted to the Congress contained the names of two Liberal Party candidates, Rubi and Gilberto Ochoa, and three National Party candidates, Urtecho, Javier Rafael Soto, Norma Iris Coto and Roy Urtecho.  While the nominating board had only five days to propose candidate, the Congress actually had 30 days to make a decision; it, however, chose to act in two.  The "Proposing Board," as mandated by the constitution, consisted of newly selected Chief Justice of the Supreme Court Jorge Rivera Aviles; a second member of the court, Victor Manuel Martinez Silva; Honduran Bar Association President Oscar Garcia; Human Rights Ombudsman Dr. Ramon Custodio; and Carlos Avila Molina, Rector of the private university Jose Cecilio del Valle.  Candidates could only be

Author:
Radek
"Mrkva"
Pilar,
Twitter,

nominated by board members; each was entitled to submit five
names.  During a week of meetings the list of 25 was whittled
down to five final candidates, which were submitted to
Congress on time on February 7.

4. (C) Comment:  The two new officials are not well known to
the Embassy.  However, at first light they appear to have
good reputations and we will work to establish a good working
relationship with them.  The positions are key to our
anti-narcotics and other anti-crime programs.  In addition,
much of our work on improving the justice sector depends on
their cooperation.

5. (C) Comment continued: Congress' fast election of the two
figures kept the selection from becoming a drawn-out
political fight, as happened with the Supreme Court selection
in January, which lead to a near constitutional crisis
(reftel).  It is unlikely that the country' political leaders
savored another fight so quickly after the court issue.
Another likely reason for the haste was to reduce the chance
for public debate on the candidates' qualifications.  Some
sources have suggested that political leaders wanted to move

TEGUCIGALP 00000087  002 OF 002


while President Zelaya was at a retreat in a remote part of
La Mosquitia in order to lessen his influence.  We doubt,
however, that the Congress would have selected a candidate
with whom Zelaya was not comfortable.  Reportedly, one of
Zelaya's concerns is that a future Attorney General will
investigate him and members of his Administration for alleged
misdeeds.  While he may not have the current political clout
to pick a candidate, we suspect he was given an opportunity
to vet them.
LLORENS

Mail/XMPP: mrkva twistedThing mrkva.eu

Latest source of this page is cablebrowser-2, released 2011-10-04

If you like this site, you can donate with Paypal  Donate  or Bitcoin:
1HSveitGNC4y5EJuVMpqRizrRRnBbP8hcY

# EXHIBIT 9

Print this page

 **HUMAN RIGHTS WATCH**                                        http://www.hrw.org

## Letter to the Attorney General of Honduras Urging Investigation into Attacks on Coup Opponents [1]

March 3, 2010

Luis Alberto Rubí
Attorney General of Honduras

Dear Mr. Rubí,

I am writing to express my concern regarding recent attacks on members of the National Popular Resistance Front (Frente Nacional de Resistencia Popular), including killings, rape, torture, kidnapping, and assault. The fact that these attacks targeted members of this political group, which opposed the 2009 coup and advocated for the reinstatement of ousted president Manuel Zelaya -- as well as previous threats received by victims or comments allegedly made by the assailants -- raise the possibility that these abuses may have been politically motivated.

Without a thorough investigation to identify who committed the crimes, to establish motive, and to hold those responsible to account, these events could generate a chilling effect that would limit the exercise of basic political rights in Honduras, including the rights of freedom of association and freedom of expression. I therefore urge you to ensure that these crimes are investigated in a prompt, thorough and impartial manner.

All of the following attacks were reported in February 2010:

Julio Benitez, a member of the National Popular Resistance Front and the Union of Workers of the National Service of Aqueduct and Sewer Systems (Sindicato de Trabajadores del Servicio Nacional de Acueductos y Alcantarillados, SANAA), was shot by men on a motorcycle as he left his home on February 15. He died in the hospital shortly afterwards. Benitez's wife said he had received numerous threatening phone calls warning him to abandon his participation in opposition groups.[1]
Hermes Reyes, a member of the "Movement of Artists in Resistance" and the "Broad Movement for Divinity and Justice," told Human Rights Watch he was leaving a meeting of the National Resistance Front on February 12 when a car drove towards him. A passenger emerged from the car and whipped

him across the face with a wire cable. Reyes fell to the ground and his attacker said, "now we know where you are, you sons of whores."[2]

The body of Vanesa Yánez, a member of the Union of Social Security Workers (Sindicato de Trabajadores del Seguro Social) and the National Popular Resistance Front, was reportedly dumped from a car on the night of February 3. According to witnesses interviewed by CODEH, her body had signs of torture.[3] Yánez's mother told HRW that her daughter had left the home the day before to buy some notebooks, and never returned.[4]

Edgar Martinez, Carol Rivera, Johan Martinez, Meliza Rivera, and one other woman-all five of whom are active members of the National Popular Resistance Front-were abducted on February 10 and taken to an undisclosed location, according to testimony collected by a nongovernmental human rights organization, Committee for the Defense of Human Rights in Honduras (Comité para la Defensa de los Derechos Humanos en Honduras, CODEH). There, they reportedly were subjected to torture and two of the women were raped. According to victims' testimony, when they were set free, one of their captors said, "Pepe says hi," using the nickname of President Porfirio Lobo. The victims have since moved locations out of fear for their safety.[5]

Claudia Larissa Brizuela was murdered in her home on February 24. Her father, Pedro Brizuela, is a prominent leader of the National Popular Resistance Front, of which she was also a member.[6]

In addition to the attacks on members of the National Popular Resistance Front, we have also received a report of a politically-motivated attack on two journalists:

Manuel de Jesus Murillo from Globo TV and Ricardo Antonio Rodriguez from Noticiero Mi Nacion were reportedly detained on February 2 by plain-clothes men who identified themselves with police badges and told them to get into a car. According to testimony collected by CODEH, the men were then taken to a house where they were tortured and interrogated about arms possessed by the resistance. The journalists said they were told their families would be killed if they denounced their abuse.[7]

We understand the human rights unit of your office is investigating five of these cases.[8] Given the fact that such a unit has faced several obstacles in the past to investigate cases of alleged human rights abuses, we respectfully urge you to actively support the investigations into the crimes mentioned in this letter.[9]

Thank you in advance for taking into consideration this urgent matter.

Best regards,

José Miguel Vivanco
Americas Director

Letter to the Attorney General of Honduras urging investigation into attacks on coup opponents

## Human Rights Watch

[1] Human Rights Watch telephone interview with Lidia Fúnez, February 19, 2010.

[2] Human Rights Watch telephone interview with Hermes Reyes, February 19, 2010.

[3] Human Rights Watch telephone interview with Andres Pavon, Comité para la Defensa de los Derechos Humanos en Honduras (CODEH), February 18, 2010.

[4] Human Rights Watch telephone interview with Vanesa Yáñez's mother, February 19, 2010.

[5] Human Rights Watch telephone interview with Andres Pavon, CODEH, February 18, 2010.

[6] AFP, "Activist of Front against the Coup in Honduras is murdered [Asesinan a activista del Frente contra el Golpe de Estado en Honduras]," February 25, 2010.  La Tribuna, "Search for gang member who killed daughter of popular leader continues [Buscan "marero" que mató a hija del dirigente popular]," February 27, 2010.

[7] Human Rights Watch telephone interview with Andres Pavon, CODEH, February 18, 2010.

[8] Human Rights Watch telephone interview with Sandra Ponce, head of the human rights unit of the Honduras Attorney General's Office, March 2, 2010.

[9] Human Rights Watch representatives visited Honduras in October 2009 and documented the serious obstacles human rights unit prosecutors faced in carrying out their investigations. For additional information, see Human Rights Watch, "Honduras: Stop Blocking Human Rights Inquiries [2]," press release, October 16, 2009.

**Source URL:** http://www.hrw.org/news/2010/03/03/letter-attorney-general-honduras-urging-investigation-attacks-coup-opponents

**Links:**
[1] http://www.hrw.org/news/2010/03/03/letter-attorney-general-honduras-urging-investigation-attacks-coup-opponents
[2] http://www.hrw.org/en/news/2009/10/16/honduras-stop-blocking-human-rights-inquiries

© Copyright 2013, Human Rights Watch